(No. 97267.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Cross-Appellee, v. EMMANUEL ROBINSON, Appellee and Cross-Appellant.

*Opinion filed October 20, 2005.*

44

KILBRIDE, J., concurring in part and dissenting in part.

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (Linda D. Woloshin, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Michele Grimaldi Stein, Alan J. Spellberg, Owen D. Kalt and Annette Collins, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Jennifer Bonjean, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee and cross-appellant.

JUSTICE GARMAN delivered the opinion of the court:

Petitioner, Emmanuel Robinson, filed a *pro se* petition under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122—1 *et seq.* (West 2000)), challenging his

convictions for first degree murder and attempted first degree murder. The circuit court of Cook County summarily dismissed his petition as frivolous or patently without merit. See 725 ILCS 5/122—2.1(a)(2) (West 2000). Twelve days after the order of dismissal was entered, the clerk served the order on petitioner by certified mail. However, the Act provides that such an order "shall be served upon the petitioner by certified mail within 10 days of its entry." 725 ILCS 5/122—2.1(a)(2) (West 2000). Thus, service was two days late. Nevertheless, petitioner timely filed a notice of appeal. The appellate court reversed and remanded. 343 Ill. App. 3d 910. The appellate court held the Act's 10-day service provision is mandatory, and therefore the clerk's failure to timely serve petitioner required that the petition be remanded for further proceedings. 343 Ill. App. 3d at 921. The State sought leave to appeal, which we allowed. See 177 Ill. 2d R. 315. Petitioner seeks cross-relief, arguing the circuit court erred in dismissing his petition as frivolous or patently without merit.

## BACKGROUND

Petitioner was convicted after a bench trial of first degree murder, attempted murder, and aggravated battery with a firearm. The charges stemmed from a shooting in which Tommy McNeal was killed and Tommy's brother, Raleigh McNeal, was wounded. At trial, Raleigh testified that early in the afternoon of July 10, 1997, he and Tommy were standing in front of their mother's house at 5656 South Paulina in Chicago, near the corner of Paulina and 57th. Raleigh was selling heroin on the corner that day, but Tommy was not. A car pulled up, and petitioner, his codefendant Arthur Wilson, known as "Ton Ton," and a man named Troy got out. Raleigh had known petitioner for three or four years because they lived in the same neighborhood, and had known Wilson for six to eight months. Petitioner told Raleigh and

Tommy they had to stop selling drugs on that corner. Tommy replied that they were not selling drugs, and they would not leave the corner because they lived there. Petitioner replied that if they did not stop selling drugs on that corner he would return after dark and "air out"—which Raleigh understood to mean kill—everyone he found there. Petitioner, Wilson and Troy then left.

That evening at about 9 p.m. Raleigh and Tommy were standing on the same corner. Raleigh noticed a light attached to a motion sensor at 5650 Paulina come on. This caused him to look toward the gangway between that house and his sister's house, at 5652 Paulina, because he knew that when the light came on someone was moving either behind the house or in the gangway. He saw three men dressed in black, wearing black skullcaps, come out of the gangway onto Paulina and begin walking south toward him. Raleigh identified petitioner and his codefendant Wilson as two of the men. He testified he could not identify the third man. He noticed all three carried guns. At that point, the three began shooting and Raleigh turned and ran, trying to reach shelter behind a tree near the corner. He was hit in the left leg and fell. As he was lying on the ground, he noticed that Tommy had also been shot and appeared to be dead.

Shortly thereafter police officers arrived at the scene. Over petitioner's objection, Raleigh testified he told the responding officers that petitioner and "Ton Ton" shot him. Raleigh was then taken to a hospital, where he received treatment and learned that Tommy was dead. After about three hours he left the hospital and went home. On July 13 he went to the police station to view two lineups, in which he identified petitioner and his codefendant Wilson.

A second eyewitness, Raleigh and Tommy's sister Claire McNeal, described the shooting in substantial agreement with Raleigh's testimony. Claire had not been

present during the confrontation earlier in the day, nor did she know petitioner or Wilson prior to the shooting. Like Raleigh, she identified petitioner and Wilson as shooters in lineups conducted on July 13.

The trial court found petitioner guilty of first degree murder, attempted first degree murder, and aggravated battery with a firearm. Petitioner was sentenced to concurrent terms of 45 years for the murder and 20 years each for attempted murder and aggravated battery. On direct appeal, the appellate court vacated the aggravated battery conviction, based on the one act, one crime doctrine, and affirmed the other convictions and sentences. *People v. Robinson*, No. 1—99—2348 (2001) (unpublished order under Supreme Court Rule 23). While the direct appeal was pending, petitioner filed a *pro se* postconviction petition in which he alleged, on numerous grounds, that his trial counsel and appellate counsel had been ineffective, that his trial was unfair, and that he was not proven guilty beyond a reasonable doubt.

In reversing the summary dismissal of defendant's petition, the appellate court noted that section 122—2.1(a)(2) of the Act provides that an order of dismissal "shall" be served within 10 days of entry and that "shall" is generally indicative of mandatory intent. 343 Ill. App. 3d at 919-20. The court then noted that in *People v. Porter* this court had addressed a different timing requirement in section 122—2.1, namely, that the circuit court shall enter an order of dismissal within 30 (now 90) days, and held it to be mandatory. 343 Ill. App. 3d at 920, citing *People v. Porter*, 122 Ill. 2d 64, 85 (1988). The court emphasized that *Porter* distinguished the timing requirement from another requirement in section 122—2.1, which purported to require the court to issue a written order with findings of fact and conclusions of law. 343 Ill. App. 3d at 920-21, quoting *Porter*, 122 Ill. 2d at 82. *Porter* reasoned that the written-order requirement

intruded upon the judicial function of the court, and therefore to read the written order requirement as mandatory would violate the doctrine of separation of powers. 343 Ill. App. 3d at 920-21, citing *Porter*, 122 Ill. 2d at 82. Applying *Porter*, the appellate court reasoned that, because the 10-day service requirement involves a ministerial function, not a judicial function, and because the 10-day service requirement appears within the same section of the Act as the 90-day requirement, the 10-day requirement is also mandatory. 343 Ill. App. 3d at 921. Because it is mandatory, the court concluded, the clerk's failure to comply required the petition be remanded for further proceedings. 343 Ill. App. 3d at 921.

## ANALYSIS

### I. The State's Appeal

The pertinent part of section 122—2.1 of the Act provides as follows:

> "If *** the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision. Such order of dismissal is final and shall be served upon the petitioner by certified mail within 10 days of its entry." 725 ILCS 5/122—2.1(a)(2) (West 2000).

Before this court, petitioner stresses the fact that the statute provides the clerk "shall" serve him within 10 days, and points out that "shall" generally indicates the legislature's intent to impose a mandatory obligation. See *People v. O'Brien*, 197 Ill. 2d 88, 93 (2001).

In this case, however, there is no genuine dispute that the 10-day notice requirement has the force of a command and that it imposed a mandatory obligation on the clerk. We do not understand the State to argue that the legislature meant merely to grant the clerk permission to effect service within 10 days, if the clerk so chooses, or that the legislature only meant to suggest it

might be a good idea to effect service within 10 days. In short, there is no dispute that "shall" means shall, and therefore the clerk failed to do something that was obligatory. The issue is the *consequence* of the clerk's failure.

It is entirely understandable why petitioner would argue as he does. The issue in this case can be stated as whether the statute is mandatory or directory. That question is easily confused with the separate question whether statutory language is mandatory or permissive. Because the word "mandatory" appears in both, it is natural to suppose they are really the same question and that the words "permissive" and "directory" must be synonyms. However, as courts have occasionally pointed out, they are not the same question at all.

For example, in *Morris v. County of Marin*, 18 Cal. 3d 901, 559 P.2d 606, 136 Cal. Rptr. 251 (1977), the question was whether a California statute, which provided that every county that issues building permits "shall" require all applicants for such permits to file a certificate of worker's compensation insurance, qualified as a "mandatory duty" within the meaning of a second California statute, which provided that governmental entities could be liable for damages due to breach of certain mandatory duties. The *Morris* court carefully distinguished that question from the separate question whether the statute was mandatory or directory:

"[D]efendant simply confuses the 'mandatory duty' terminology of [the second statute] with the entirely distinct and unrelated legal doctrine pertaining to 'directory' or 'mandatory' provisions. *** [T]he term 'mandatory' refers to an obligatory duty which a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses. By contrast, the 'directory' or 'mandatory' designation does not refer to whether a particular statutory requirement is 'permissive' or 'obligatory,' but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of

invalidating the governmental action to which the procedural requirement relates." *Morris,* 18 Cal. 3d at 908, 559 P.2d at 610-11, 136 Cal. Rptr. at 255-56. See also *State v. $435,000,* 842 S.W.2d 642, 644 (Tex. 1992) (where the defendant in a forfeiture proceeding argued that the judgment was void due to violation of a statute requiring that a hearing in such proceedings "shall" be set within 30 days of filing, "the issue is not whether 'shall' is mandatory, but what consequences follow a failure to comply"); *City of Boston v. Barry,* 315 Mass. 572, 577, 53 N.E.2d 686, 688-89 (1944) (where a property owner attempting to redeem property by paying delinquent taxes argued she was not liable to pay taxes for years in which the collector failed to comply with a statute requiring that he "shall" certify certain taxes by September 1, the fact that the statute is mandatory rather than permissive is "beside the point. *** The real question is whether the Legislature intended *** that if certification should not be timely, the tax should be uncollectible on redemption"). In sum, the mandatory-permissive dichotomy concerns whether the language of a statute has the force of a command that imposes an obligation, or is merely a grant of permission or a suggestion, which therefore imposes no obligation. The mandatory-directory dichotomy, which is at issue in this case, concerns the consequences of a failure to fulfill an obligation.

The United States Supreme Court recently underscored this distinction. See *Barnhart v. Peabody Coal Co.,* 537 U.S. 149, 154 L. Ed. 2d 653, 123 S. Ct. 748 (2003). In *Barnhart,* the statute at issue provided that the Commissioner of Social Security "shall," by October 1, 1993, assign each retired coal miner to an existing coal mining company, which company would then be responsible for funding the miner's pension benefits. *Barnhart,* 537 U.S. at 152, 154 L. Ed. 2d at 661, 123 S. Ct. at 752, citing 26 U.S.C. § 9706(a) (2000). The Commissioner assigned some

miners after October 1, 1993. Several mining companies brought suit alleging the late assignments were void. The Court explained that "[i]t misses the point simply to argue that the October 1, 1993, date was 'mandatory,' 'imperative,' or a 'deadline,' as of course it was \*\*\*. \*\*\* [T]he failure to act on schedule merely raises the real question, which is what the consequences of tardiness should be." *Barnhart*, 537 U.S. at 157, 154 L. Ed. 2d at 664-65, 123 S. Ct. at 754. Similarly, in this case the 10-day service provision is a deadline, and the real question is the consequence of the clerk's tardiness. It misses the point to stress that the legislature used "shall" and that "shall" indicates intent to impose a mandatory obligation.

We acknowledge that this court helped create the situation we are now trying to address. We have spoken as if the mandatory-permissive dichotomy were the same as the mandatory-directory. See, *e.g.*, *People v. Reed*, 177 Ill. 2d 389, 393 (1997) ("Legislative use of the word 'may' is generally regarded as indicating a permissive or directory reading, whereas use of the word 'shall' is generally considered to express a mandatory reading"). Moreover, we have cited the rule that the word "shall" generally indicates mandatory intent, even though the mandatory-directory dichotomy was at issue, not the mandatory-permissive. See, *e.g.*, *Andrews v. Foxworthy*, 71 Ill. 2d 13, 21 (1978) (citing the rule in support of invalidating taxes for failure to timely publish assessments); *People v. Youngbey*, 82 Ill. 2d 556, 562 (1980) (citing the rule in support of vacating criminal sentences imposed in violation of a statutory command that the circuit court consider a written presentence report prior to sentencing).

However, in no case regarding the mandatory-directory dichotomy has "shall" controlled the outcome. For example, in *Andrews*, we considered the purpose of

the statute and stressed that the purpose of timely publication of tax assessments is to enable each taxpayer to determine whether his assessment is disproportionate or excessive. *Andrews*, 71 Ill. 2d at 22-23. In *Youngbey*, instead of relying on the word "shall," we relied on the fact that the statute required that a "defendant shall not be sentenced before" the court considered a presentence report. *Youngbey*, 82 Ill. 2d at 561-62, quoting Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—1. Accordingly we may now clarify that whenever, as in this case, the mandatory-directory dichotomy is at issue the word "shall" is not determinative. On the other hand, when the issue is whether the force of the statutory language is mandatory or permissive, then "shall" does usually indicate the legislature intended to impose a mandatory obligation. See *O'Brien*, 197 Ill. 2d at 93.

With that clarification in mind, we return to the merits. Whether a statutory command is mandatory or directory is a question of statutory construction, which we review *de novo*. *People v. Ramirez*, 214 Ill. 2d 176, 179 (2005). The answer is a matter of legislative intent. *Pullen v. Mulligan*, 138 Ill. 2d 21, 46 (1990). The statute's language is the best evidence of legislative intent. *Pullen*, 138 Ill. 2d at 46. Accordingly, when the statute expressly prescribes a consequence for failure to obey a statutory provision, that is very strong evidence the legislature intended that consequence to be mandatory. See *Porter*, 122 Ill. 2d at 84-85; *Pullen*, 138 Ill. 2d at 46.

In this case, the State claims the statute does not specify a consequence for the clerk's tardiness. The petitioner replies that the consequence is specified in section 122—2.1(b), which provides that if a petition "is not dismissed pursuant to this Section," it must be docketed for further consideration. See 725 ILCS 5/122—2.1(b) (West 2000). Thus, at issue is whether the clerk's tardiness means the petition in this case was "not dismissed pursuant to this section."

On this point, each party relies on *Porter*. As the State points out, *Porter* held that failure to dismiss in a written order with findings of fact and conclusions of law does not trigger section 122—2.1(b), despite the fact that section 122—2.1(a)(2) provides that the court " 'shall dismiss the petition in a written order.' " *Porter*, 122 Ill. 2d at 84, quoting Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—2.1(a). However, as petitioner points out, *Porter* also held that failure to enter an order of dismissal within the time specified in section 122—2.1(a) does trigger section 122—2.1(b), so that an untimely dismissal is void. *Porter*, 122 Ill. 2d at 84. To explain why these two holdings do not conflict, *Porter* reasoned that if the requirement regarding the content of the court's order were read to be mandatory, it would violate the constitutional doctrine of separation of powers. *Porter*, 122 Ill. 2d at 85-86, citing *People v. Davis*, 93 Ill. 2d 155 (1982).

Applying *Porter* to this case, the appellate court reasoned that effecting service is a ministerial act, not a judicial act. 343 Ill. App. 3d at 921. We agree. Because effecting service is not a judicial act, *Porter*'s holding that the legislature may not mandate the content of a judicial order is inapposite. However, contrary to the appellate court, it does not follow that *Porter*'s second holding—that an untimely dismissal is void—controls this case. See *Porter*, 122 Ill. 2d at 84. This case involves untimely service, not untimely dismissal. Although untimely dismissal does trigger section 122—2.1(b), it does not follow that timely dismissal followed by untimely service does.

We find section 122—2.1(b) to be ambiguous as to whether untimely service triggers the express consequence that the petition must be docketed for further consideration. A statute is ambiguous if it permits more than one reasonable interpretation. *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 55 (2002). On one hand, it is

reasonable to suppose the legislature meant that a dismissal is "pursuant to this section," notwithstanding any subsequent error by the clerk, provided it is dismissed under the authority granted to the court by section 122—2.1(a). Unlike *Porter*, the timely dismissal in this case was within the court's statutory grant of authority to examine and summarily dismiss a petition within the specified time. On the other hand, it is also reasonable to suppose that a dismissal is not "pursuant to this section" if any of the legitimate requirements of "this section," including timely service, go unfulfilled. The ambiguity arises from the fact that "pursuant to" may mean either "as authorized by" or "in compliance with." Black's Law Dictionary 1272 (8th ed. 2004).

Having found the statute ambiguous on the point at issue, we may consider other evidence to determine what the legislature intended. *People v. Ross*, 168 Ill. 2d 347, 352 (1995). In particular, we may consider the purpose of the statute. See *Reda*, 199 Ill. 2d at 55. It has long been held that "statutory requisitions" directed to government officials " 'designed to secure order, system and dispatch in proceedings' " are usually directory rather than mandatory, but if they " 'are intended for the protection of the citizen, *** and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory.' " *People v. Jennings*, 3 Ill. 2d 125, 127 (1954), quoting *French v. Edwards*, 80 U.S. (13 Wall.) 506, 511, 20 L. Ed. 702, 703 (1872). In other words, commands to government officials regarding procedure are usually directory, but there is an exception when the official's failure to follow the procedure will "generally" injure the right the procedure was designed to protect. For example, in *Jennings* we held that a provision requiring publication of property tax assessment rolls was mandatory rather than directory because, without publication, taxpayers would gener-

ally be unable to enforce their right not to be taxed excessively or disproportionately. *Jennings*, 3 Ill. 2d at 128.

In this case, the 10-day service provision is a procedural command to the clerk meant to secure "dispatch in proceedings" for the sake of protecting the petitioner's right to appeal. See *People v. Adams*, 338 Ill. App. 3d 471, 474 (2003). While the right to appeal might be injured by untimely service in a given case, there is no reason to believe that it generally would be. The right to appeal is preserved if notice of appeal is filed within 30 days. 188 Ill. 2d R. 606. Because 30 days minus 10 leaves 20, and because it is not difficult to prepare a notice of appeal, there are likely to be many cases, like the case at bar, in which the right to appeal is unaffected by untimely service. We conclude that a violation of the 10-day service requirement is not so likely to prejudice the right to appeal as to require an exception to the general rule that procedural commands to government officials are directory.

The passage from *French* which we cited in *Jennings* states a second exception to the general rule that procedural commands to government officials are directory. Statutory provisions " 'designed to secure order, system and dispatch in proceedings *** are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time.' " *Jennings*, 3 Ill. 2d at 127, quoting *French*, 80 U.S. (13 Wall.) at 511, 20 L. Ed. at 703. We applied this exception, for example, in *In re Application of the County Collector*, 132 Ill. 2d 64, 74-75 (1989). That case concerned an ordinance of the City of Aurora, governing appropriations ordinances, which provided, " 'No such ordinance shall take effect until ten (10) days after it is *** published ***.' " (Emphasis omitted.) *In re Application of the County Collector*, 132 Ill. 2d at 71, quoting Aurora, Ill., Code of Ordinances § 2—28.

We concluded the negative language established the provision was mandatory, so that failure to publish with the required lead time voided the appropriations ordinance and therefore invalidated the tax levy based on the appropriation. *In re Application of the County Collector*, 132 Ill. 2d at 75-76.

In this case, the statute does not include negative words indicating that no dismissal shall occur or become effective unless the petitioner is timely served. The statute as written indicates the legislature intended that an order summarily dismissing the petition would be entered first, with timely service to follow. Had it intended a different arrangement, the legislature could easily have written, for example, that no summary dismissal shall be entered unless the clerk timely serves notice of the court's intent to dismiss, or that no dismissal shall become a final order unless there is timely service. We conclude the "negative language" exception does not apply to this case. Nor is there any other exception that applies to this case to prevent application of the general rule that procedural commands to government officials are directory.

In sum, the statute expressly provides that petitions "not dismissed pursuant to this Section" must be docketed for further consideration. 725 ILCS 5/122—2.1(b) (West 2000). However, the statute is ambiguous as to whether the clerk's failure to effect service within 10 days brings this case under that express provision. We therefore consider the purpose of the 10-day requirement and note it is a procedural command to a government official. As such it is presumptively directory. Nevertheless, it is mandatory if the right it is designed to protect would generally be injured under a directory reading, or if there is negative language prohibiting further action in case of noncompliance. We find neither exception applies. We therefore hold that the clerk's duty to effect service

within 10 days is directory, and thus the clerk's tardiness did not invalidate the judgment of the circuit court.

Our conclusion is not contrary to our recent decision in *Ramirez*. At issue in *Ramirez* was a statute permitting a defendant to be tried *in absentia* even though he was not present in open court when the trial date was set. Specifically, the statute provided that when the court sets the case for trial *in absentia* " 'the clerk *shall* send to the defendant, by certified mail at his last known address indicated on his bond slip, notice of the new date which has been set for trial.' " (Emphasis added.) *Ramirez*, 214 Ill. 2d at 182, quoting 725 ILCS 5/115—4.1(a) (West 1992). The defendant argued he was entitled to a new trial because notice of his trial date was sent by regular mail, not certified mail. The State replied that the clerk's error was harmless because the defendant had constructive notice of the trial date through his counsel. We agreed with the defendant. We reasoned, first, that the word "shall" indicated that use of certified mail was a mandatory obligation of the clerk and that the statute included no exceptions. *Ramirez*, 214 Ill. 2d at 182-83. We then pointed out that the certified mail requirement was part of a larger legislative scheme. *Ramirez*, 214 Ill. 2d at 183. After describing the elements of that scheme, which included the requirement that the defendant be advised in open court that failure to appear at trial may result in trial *in absentia*, and the requirement that the State prove with substantial evidence that the defendant was willfully avoiding trial, we concluded that strict compliance with the certified mailing requirement was one of the "necessary statutory safeguards" designed to protect the important constitutional rights that are lost when a person is tried *in absentia*. *Ramirez*, 214 Ill. 2d at 183-84. We therefore rejected the State's position that the clerk's failure to use certified mail could be harmless in some cases. *Ramirez*, 214 Ill. 2d at 184. In

other words, in *Ramirez* we applied the first exception to the general rule that procedural commands to government officials are directory because we found that a mandatory reading was necessary to adequately protect the important trial rights the certified mail requirement was designed to protect. In this case we reach the opposite conclusion regarding the relationship between the right to appeal and the 10-day service deadline.

The appellate court suggested that to read the 10-day deadline as directory is to leave the petitioner with a right but no remedy. 343 Ill. App. 3d at 921-22. As noted above, there is no dispute the clerk had a statutory duty to serve petitioner on time. Therefore, petitioner had a right to timely service. In this case, however, petitioner requires no remedy because he was not prejudiced by the clerk's error. He filed his notice of appeal on time.

## II. The Petitioner's Request for Cross-Relief

Petitioner requests cross-relief. He claims the circuit court erred when it summarily dismissed his postconviction petition as frivolous or patently without merit. We review this question *de novo. People v. Edwards*, 197 Ill. 2d 239, 247 (2001). A postconviction petition is frivolous or patently without merit when its allegations, taken as true and liberally construed, fail to present the gist of a constitutional claim. *Edwards*, 197 Ill. 2d at 244. "The 'gist' standard is 'a low threshold.'" *Edwards*, 197 Ill. 2d at 244, quoting *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996).

Before this court, petitioner argues he met the "gist" standard by alleging that his appellate counsel was ineffective for failing to argue on direct appeal that the circuit court committed reversible error by admitting certain hearsay evidence at trial. Specifically, the court permitted Raleigh McNeal to testify that he told police officers at the scene of the shooting that petitioner was one of the shooters. The court also permitted Officer Du-

Bose, one of the responding officers, to testify that Raleigh made an identification, either at the scene or at the hospital. DuBose did not state whom Raleigh identified.

As a threshold matter, the State points out petitioner's *pro se* petition does not allege the court erred by admitting hearsay through the testimony of Raleigh and DuBose. Rather, the petition only alleges that hearsay was admitted through the testimony of Detective John Murray. The State correctly argues that petitioner may not raise a claim for the first time on appeal from the dismissal of his petition. See *People v. Jones*, 213 Ill. 2d 498 (2004). In response, petitioner points out that his petition alleged that the State's eyewitness testimony was unfairly bolstered by inadmissible hearsay. Petitioner argues that, if liberally construed, this allegation should not be limited to Murray's testimony and is therefore sufficient to raise the claim he asserts before this court.

For reasons that follow, it is clear the claim petitioner raises before this court lacks merit. We therefore choose to decide petitioner's request for cross-relief on the merits. We assume, without deciding, that the claim petitioner asserts through counsel was properly raised in his *pro se* petition.

A defendant has a constitutional right to effective assistance of counsel during his appeal as of right. *People v. Flores*, 153 Ill. 2d 264, 277 (1992). To establish that appellate counsel was ineffective, petitioner must show both that counsel's performance was deficient and that counsel's error was prejudicial. *Flores*, 153 Ill. 2d at 283, citing *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Counsel's error was prejudicial if there is a reasonable probability the result of the appeal would have been different but for the error. *Flores*, 153 Ill. 2d at 283, quoting *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Petitioner claims appellate counsel should have argued that Raleigh's out-of-court statement to police that defendant was one of the shooters was inadmissible hearsay. However, there is an exception to the hearsay rule for "spontaneous declarations." See *People v. Williams*, 193 Ill. 2d 306, 352 (2000). For a hearsay statement to be admissible under this exception, (1) there must have been an occurrence that was sufficiently startling to produce a spontaneous and unreflecting statement, (2) there must have been an absence of time between the occurrence and the statement for the declarant to fabricate the statement, and (3) the statement must relate to the circumstances of the occurrence. *Williams*, 193 Ill. 2d at 352. In applying these elements to determine whether a hearsay statement is admissible, a court should consider the totality of the circumstances, including " 'the nature of the event, the mental and physical condition of the declarant, and the presence or absence of self-interest.' " *Williams*, 193 Ill. 2d at 352, quoting *People v. House*, 141 Ill. 2d 323, 382 (1990). A reviewing court will not disturb the trial court's decision regarding the admission of evidence at trial absent a clear abuse of discretion. *People v. Manning*, 82 Ill. 2d 193, 211 (1998).

The record shows Raleigh identified petitioner to police as one of the shooters mere minutes after being shot and after seeing that his brother had also been shot and appeared to be dead. These are sufficiently startling events. There is no indication in the record that Raleigh had a motive to falsely identify petitioner. Plainly, all three elements of the exception for spontaneous declarations are satisfied, and nothing in the totality of the circumstances indicates Raleigh's statement should not have been admitted. Accordingly, we find it extremely unlikely that a reviewing court would have concluded the trial court abused its discretion when it admitted

Raleigh's statement at the scene identifying petitioner. Therefore, appellate counsel's failure to raise the issue was not an error and did not prejudice defendant.

It is questionable whether Officer DuBose's testimony that Raleigh identified the offenders, without testifying whom he identified, is hearsay at all. However, because we have concluded that the identification was clearly admissible as a spontaneous declaration, we need not address that question. For the same reason, we need not address the other grounds offered by the State for the admissibility of the identification.

In sum, petitioner's claim that he received ineffective assistance of appellate counsel is patently without merit, and his postconviction petition was properly dismissed.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court remanding Robinson's postconviction petition. The judgment of the circuit court, dismissing the petition, is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE KILBRIDE, concurring in part and dissenting in part:

I concur with the majority that petitioner, Emmanuel Robinson, is entitled to no remedy because the *de minimis* delay did not deprive him of the right to file a timely notice of appeal. I dissent, however, from the majority's review of the merits of petitioner's postconviction petition because such a review is premature.

To survive summary dismissal, a postconviction petition need only present " 'the gist of a constitutional claim.' " *People v. Boclair*, 202 Ill. 2d 89, 99-100, quoting *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). As the majority acknowledges, " '[t]he "gist" standard is "a low threshold." ' " 217 Ill. 2d at 60, quoting *People v. Ed-*

*wards*, 197 Ill. 2d 239, 244 (2001), quoting *Gaultney*, 174 Ill. 2d 418. At this stage in the proceedings, the only issue is "whether the petition alleges constitutional deprivations." See *Boclair*, 202 Ill. 2d at 102.

In his postconviction petition, petitioner alleges, *inter alia*, that his trial counsel was ineffective:

(1) for not moving for a substitution of the judge who conducted a hearing on his motion to suppress confession;

(2) for not interviewing a State witness prior to trial and conducting any investigation to discover other witnesses that could have impeached the State witness' testimony;

(3) for failing to object to Detective John Murray's hearsay testimony concerning police reports prepared by other police personnel, and failing to impeach Detective Murray's testimony with other reports, and calling impeachment witnesses;

(4) for not objecting to testimony depicting petitioner as a "drug dealer," when there was no evidence to corroborate or substantiate that testimony;

(5) for failing to object to highly inflammatory and prejudicial testimony, or impeaching a witness with prior grand jury testimony;

(6) for withdrawing a motion to quash arrest and suppress evidence when the trial court had already granted a motion to suppress petitioner's inculpatory statement made during custodial interrogation in violation of petitioner's fifth and sixth amendment rights;

(7) for failing to secure an expert witness to testify concerning firearms;

(8) for failing to move for a suppression hearing based on suggestive identification procedures;

(9) for failing to object to in-court identification of petitioner;

(10) for failing to provide effective assistance of counsel at trial when counsel made no opening statement, objected only twice during the entire trial, cross-examined only two of the State's seven witnesses, and failed to preserve errors for appellate review.

Petitioner further alleges ineffective assistance of ap-

pellate counsel for withdrawing as counsel based on his assumption that if he pursued the appeal petitioner could receive a lengthier sentence.

Petitioner's postconviction petition certainly presents the "gist" of a constitutional claim to survive the first stage of the process for the adjudication of postconviction petitions. Rather than determining whether petitioner has presented the "gist" of a constitutional claim, however, the majority prematurely reviews the merits of those claims, when the circuit court has not done so.

The proper procedure at this point in the proceedings is to remand the cause to the circuit court for second-stage proceedings where counsel may be appointed to represent the petitioner, and counsel will then have an opportunity to amend the petition. 725 ILCS 5/122—1 *et seq.* (West 2000); *Boclair*, 202 Ill. 2d at 100, citing *People v. Watson*, 187 Ill. 2d 448 (1999). If the petition is not dismissed by motion of the State at the second stage of the postconviction process, then an evidentiary hearing on the merits of the petition will be conducted in the third stage of the postconviction proceedings. 725 ILCS 5/122—6 (West 2000); *Boclair*, 202 Ill. 2d at 100.

Thus, I would affirm the appellate court judgment, albeit on different grounds, and remand this cause to the circuit court for further proceedings. I therefore respectfully concur in part and dissent in part.