No. 2--07--0926     Filed: 1-15-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 03--CM--7379 05--CF--1880 |
| JAIME DE LEON, | ) ) ) | Honorable Victoria A. Rossetti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the opinion of the court:

Defendant, Jaime De Leon, pleaded guilty to domestic battery (720 ILCS 5/12--3.2(a)(1) (West 2004)) and driving while his license was revoked (625 ILCS 5/6--303(d) (West 2004)) and was sentenced to concurrent one-year terms of imprisonment. After serving his sentence, defendant filed a petition under section 2--1401 of the Code of Civil Procedure (the Civil Code) (735 ILCS 5/2--1401 (West 2006)), seeking to have his guilty pleas and convictions vacated based on the trial court's failure to inform him, under section 113--8 of the Code of Criminal Procedure of 1963 (the Criminal Code) (725 ILCS 5/113--8 (West 2006)), that his convictions could have "the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States." The trial court granted the State's motion to dismiss the petition, and defendant timely appealed. For the following reasons, we affirm.

## I. BACKGROUND

On January 12, 2004, defendant pleaded guilty in case No. 03--CM--7379 to misdemeanor domestic battery and was sentenced to one year of probation. On July 26, 2005, defendant pleaded guilty in case No. 05--CF--1880 to domestic battery and driving while his license was revoked. The domestic-battery charge was enhanced to a felony based on defendant's prior conviction. See 720 ILCS 5/12--3.2(b) (West 2004). Before the trial court accepted defendant's guilty pleas on July 26, 2005, the followed exchange took place:

"THE COURT: And is there an issue with regard to immigration?

[DEFENSE COUNSEL]: Judge, [defendant] is a legal resident. I have discussed with him the fact that no one in this court can promise him what effect this may have on his immigration status.

THE COURT: [Defendant], did you go over that issue of your immigration with your attorney?

THE DEFENDANT: Yes.

THE COURT: And you understand, sir, that no one can make you any promises with regard to your status here based on these charges. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And knowing that, sir, do you still wish to plead guilty to these charges?

THE DEFENDANT: Yes."

The trial court then sentenced defendant to one year of imprisonment on each count, to be served concurrently.

In subsequent removal proceedings, on March 13, 2006, an immigration judge (IJ) found defendant removable from the United States and ineligible for any relief from removal. Defendant appealed to the Board of Immigration Appeals (BIA). On June 9, 2006, the BIA affirmed the IJ. Defendant appealed to the Seventh Circuit Court of Appeals, which has been holding the case in abeyance pending the outcome of this appeal.

On February 8, 2007, defendant filed a petition for relief from judgment in case No. 03--CM--7379, under section 2--1401 of the Civil Code. He argued that, when he pleaded guilty to misdemeanor domestic battery, the trial court failed to admonish him that his conviction could have "the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States" as required under section 113--8 of the Criminal Code. Defendant asked the court to allow him to withdraw his plea and to vacate his conviction.

Also on February 8, 2007, defendant filed a petition for relief from judgment in case No. 05--CF--1880, again under section 2--1401 of the Civil Code. He argued that, when he pleaded guilty to domestic battery and driving while his license was revoked, although the trial court told him that "no one can make you any promises with regard to your status here based on these charges," the trial court did not inform him that his convictions could have "the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States" as required under section 113--8 of the Criminal Code. Defendant argued that he entered his guilty pleas "under a misapprehension of the law and therefore his plea was not informed, knowing, and voluntary." Defendant asked the court to allow him to withdraw his pleas and to vacate his convictions. Defendant attached to his petition the transcript of the plea hearing and the BIA decision. On May 11, 2007, defendant filed an affidavit in which he averred that, at the July 26, 2005,

hearing, the court did not inform him of the consequences of his guilty pleas. He also filed an affidavit in which his current counsel averred that she had been advised by defendant's plea counsel that he "had no independent memory of whether he informed [defendant] that his guilty plea could have the immigration consequences of deportation, exclusion from admission, or denial of naturalization."

The State moved to dismiss both petitions. The State argued that: (1) by pleading guilty, defendant waived any challenge to the court's failure to admonish him under section 113--8 of the Criminal Code; (2) defendant was properly warned of possible immigration consequences; (3) the court substantially complied with section 113--8 of the Criminal Code; (4) defendant's petitions were insufficient to warrant relief because they were supported by affidavits that were conclusory and composed of hearsay; and (5) the court had no duty to warn defendant of the possible immigration consequences of a guilty plea because they are collateral consequences.

On August 31, 2007, the trial court granted the State's motions to dismiss. As to case No. 03--CM--7379, the trial court found that the petition was untimely because it was filed over three years after sentencing.

As to case No. 05--CF--1880, the trial court found that: (1) at the time of the pleas, the court inquired as to defendant's immigration status, and defendant specifically stated that he had discussed the immigration issue with his attorney and that he understood that no one could make him any promises as to what effect his pleas might have on his immigration status; (2) the court properly admonished defendant of his rights and substantially complied with Supreme Court Rule 402 (177 Ill. 2d R. 402); (3) defendant's pleas were knowing and voluntary; (4) defendant's voluntary pleas waived any nonjurisdictional errors; and (5) deportation was a collateral consequence of the pleas,

and the failure to advise of collateral consequences did not render the pleas involuntary. Defendant timely appealed.

Although defendant filed a notice of appeal as to both case No. 03--CM--7379 and case No. 05--CF--1880, his brief makes clear that he is challenging the dismissal of his petition only in case No. 05--CF--1880. As to that dismissal, defendant argues that: (1) the trial court erred in concluding that it properly admonished defendant, because the substantial-compliance standard applies only to the admonishments required under Rule 402 and not to the advisements required under section 113--8 of the Criminal Code; (2) even if the substantial-compliance standard applied, "the trial court's vague references at the plea hearing to the 'issue of immigration' and [defendant's] 'status' failed to substantially comply with [section 113--8 of the Criminal Code]"; and (3) the court erred in holding that, by entering a guilty plea, defendant waived his right to file a petition for relief from judgment.

In response, the State maintains that: (1) the trial court substantially complied with section 113--8 of the Criminal Code and, thus, defendant's pleas were knowing and voluntary; (2) by pleading guilty, defendant waived any errors arising from the lack of admonishments; and (3) defendant's petition was insufficient because it was supported by affidavits that were conclusory and composed only of hearsay.

## II. ANALYSIS

Defendant filed his petition for relief under section 2--1401 of the Civil Code. Section 2--1401 of the Civil Code is a comprehensive statutory procedure by which final orders and judgments may be challenged more than 30 days after their entry. People v. Vincent, 226 Ill. 2d 1, 7 (2007); People v. Mathis, 357 Ill. App. 3d 45, 49 (2005). It is a civil remedy that also extends to criminal cases. Vincent, 226 Ill. 2d at 8; see Mathis, 357 Ill. App. 3d at 50 (because the defendant

was unable to seek relief under the Post-Conviction Hearing Act--since he was not imprisoned and was not asserting a substantial denial of his constitutional rights--he could properly raise his claim under section 2--1401 of the Civil Code). "Relief under section 2--1401 is predicated upon proof, by a preponderance of evidence, of a defense or claim that would have precluded entry of the judgment in the original action and diligence in both discovering the defense or claim and presenting the petition." Vincent, 226 Ill. 2d at 7-8.

A petition filed under section 2--1401 must be filed in the same proceeding in which the order or judgment was entered, but it is not a continuation of the original action. 735 ILCS 5/2--1401(b) (West 2006). The petition must be supported by affidavit or other appropriate showing as to matters not of record. 735 ILCS 5/2--1401(b) (West 2006). In addition, the petition must be filed not later than two years after the entry of the order or judgment. 735 ILCS 5/2--1401(c) (West 2006). Section 2--1401 provides for an exception to the time limitation for legal disability or duress, or if the ground for relief is fraudulently concealed. 735 ILCS 5/2--1401(c) (West 2006).

Our supreme court "has consistently held that proceedings under section 2--1401 are subject to the usual rules of civil practice." Vincent, 226 Ill. 2d at 8. The court has noted that "[s]ection 2--1401 petitions are essentially complaints inviting responsive pleadings." Vincent, 226 Ill. 2d at 8. As such, "[t]he petition is subject to dismissal for want of legal or factual sufficiency." Vincent, 226 Ill. 2d at 8. "Thus, the petition may be dismissed upon a challenge that, even taking as true its allegations, it does not state a meritorious defense or diligence under section 2--1401 case law. 'Like a complaint, the petition may be challenged by a motion to dismiss for its failure to state a cause of action or if, on its face, it shows that the petitioner is not entitled to relief.' " Vincent, 226 Ill. 2d at 8, quoting Klein v. La Salle National Bank, 155 Ill. 2d 201, 205 (1993), citing Ostendorf v.

International Harvester Co., 89 Ill. 2d 273, 279-80 (1982). "[W]hen a court enters either a judgment on the pleadings or a dismissal in a section 2--1401 proceeding, that order will be reviewed, on appeal, de novo." Vincent, 226 Ill. 2d at 18. Thus, here, we review the dismissal de novo.

In his petition, defendant contended that, because the trial court failed to properly admonish him under section 113--8 of the Criminal Code, he should be allowed to withdraw his guilty pleas. Section 113--8 of the Criminal Code provides:

"Advisement concerning status as an alien.

Before the acceptance of a plea of guilty, guilty but mentally ill, or nolo contendere to a misdemeanor or felony offense, the court shall give the following advisement to the defendant in open court:

'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " 725 ILCS 5/113--8 (West 2006).

The trial court, in dismissing defendant's petition, did not mention section 113--8 of the Criminal Code. Rather, the court ruled that defendant was properly advised under Supreme Court Rule 402 and that defendant was also advised "that his plea could affect his status in this country." The court further noted that, "[a]lthough deportation may have been the result of the plea, it was a collateral consequence." The court held that defendant's pleas were entered knowingly and voluntarily and thus implicitly ruled that its failure to admonish defendant under section 113--8 of the Criminal Code did not entitle defendant to withdraw his pleas.

The question before us is whether a trial court's failure to admonish a defendant regarding immigration consequences under section 113--8 of the Criminal Code entitles a defendant to withdraw his plea. This presents a question of statutory interpretation. In interpreting a statute, we adhere to the well-settled principles of statutory construction. Our primary objective is to determine and give effect to the intent of the legislature, the best indicator of which is the plain language of the statute. People v. McClure, 218 Ill. 2d 375, 381-82 (2006). When the language used in the statute is clear and unambiguous, it must be applied as written without resort to other tools of statutory construction. Raintree Homes, Inc. v. Village of Long Grove, 209 Ill. 2d 248, 255 (2004). However, "[w]here the meaning of a statute is unclear from a reading of its language, courts may look beyond the statutory language and consider the purpose of the law, the evils it was intended to remedy, and the legislative history of the statute." Ultsch v. Illinois Municipal Retirement Fund, 226 Ill. 2d 169, 181 (2007).

There is a split of authority over whether a trial court's failure to admonish a defendant regarding immigration consequences under section 113--8 of the Criminal Code entitles a defendant to withdraw his plea. See People v. DelVillar, 383 Ill. App. 3d 80 (2008); People v. Bilelegne, 381 Ill. App. 3d 292 (2008). In Bilelegne, the second division of the First District affirmed the trial court's denial of the defendant's motion to vacate his guilty plea, holding that section 113--8 of the Criminal Code was directory. In reaching this holding, the court first turned to the language of the statute, which it acknowledged is "[t]he best evidence of legislative intent." Bilelegne, 381 Ill. App. 3d at 295. The court noted that, although the legislature's use of the word "shall" generally indicates a mandatory reading, it "does not control the outcome and is not determinative." Bilelegne, 381 Ill. App. 3d at 295. Citing People v. Robinson, 217 Ill. 2d 43, 53 (2005), the court further noted that,

when the legislature prescribes a consequence for the failure to obey its provision, it is very strong evidence that the legislature intended a mandatory reading. Bilelegne, 381 Ill. App. 3d at 295. Section 113--8 does not provide a consequence in the event a trial court fails to admonish a defendant of the immigration consequences of a guilty plea. As a result, the court found that the meaning of the word " 'shall' " was "unclear," and it turned to the legislative history of section 113--8 for further guidance. Bilelegne, 381 Ill. App. 3d at 296.

The Bilelegne court pointed out that, "[a]s originally proposed by the Illinois General Assembly, section 113--8 provided that, where the deportation admonishment was not given, the court was required to vacate the defendant's plea of guilty if the defendant demonstrated to the court's satisfaction that the guilty plea may have immigration consequences." Bilelegne, 381 Ill. App. 3d at 296. However, this portion of the original bill was deleted. At the third reading of the bill, Senator Silverstein, one of its sponsors, stated: " 'We gutted the bill. *** [T]his will just be an advisement by the court.' " (Emphasis in original.) Bilelegne, 381 Ill. App. 3d at 296, quoting 93d Ill. Gen. Assem., Senate Proceedings, March 19, 2003, at 4 (statements of Senator Silverstein). The court concluded that, based on the elimination of the penalty for noncompliance and the sponsor's statement that the admonishment was an " 'advisement,' " the legislature did not intend that the giving of the admonishment was mandatory. Bilelegne, 381 Ill. App. 3d at 296.

One justice dissented, looking to "the purpose of the law and the evils it was intended to remedy." Bilelegne, 381 Ill. App. 3d at 297 (Hall, J., dissenting). The dissent pointed to the remarks of Representative Delgado made prior to the vote in the House of Representatives. Representative Delgado stated that, " '[u]nder current law, Illinois Courts are not required to inform a noncitizen defendant pleading guilty to a misdemeanor or felony that it may affect his or her INS status. An

immigrant['s] INS status can or may be affected in numerous, very complex ways by the entry of a guilty plea to a criminal charge.' " Bilelegne, 381 Ill. App. 3d at 298 (Hall, J., dissenting), quoting 93d Ill. Gen. Assem., House Proceedings, May 7, 2003, at 72-73 (statements of Representative Delgado). According to the dissent, construing section 113--8 of the Criminal Code as directory rather than mandatory defeats the very purpose of the statute.

A few months later, the issue of whether the admonishment in section 113--8 of the Criminal Code was mandatory or directory came before the third division of the First District in DelVillar. In that case, during the plea hearing, the judge asked the defendant if he was a United States citizen, and the defendant responded in the affirmative. DelVillar, 383 Ill. App. 3d at 82. As a result, the trial court did not give the section 113--8 admonishment. Contrary to the defendant's claim, he was not a citizen, and he subsequently filed a motion to withdraw his plea based on the trial court's failure to admonish him under section 113--8. The trial court denied the motion. DelVillar, 383 Ill. App. 3d at 83.

On review, the court agreed with the dissent in Bilelegne and concluded that the admonishment was mandatory. The court noted that "[t]he best indication of legislative intent is the statutory language, given its plain and ordinary meaning." DelVillar, 383 Ill. App. 3d at 84. The court found irrelevant the fact that the defendant had lied to the trial court about his immigration status during the proceedings. The court held:

"The plain language of section 113--8 of the Code required the trial court to admonish the defendant concerning the potential immigration consequences of a guilty plea. We note that in the many iterations of the language of the bill which ultimately became section 113--8, the legislators could have required trial judges to inquire of the defendant regarding immigration

status before giving the admonishment. The legislators chose not to do so and enacted a statute which appears clearly mandatory on its face." DelVillar, 383 Ill. App. 3d at 88-89. The court also noted the legislative history and stated: "There were many opportunities for the legislature to remove the word 'shall' and they declined to do so. Further, Representative Delgado made it clear that the legislation was being enacted to remedy an existing problem." DelVillar, 383 Ill. App. 3d at 87.

We disagree with DelVillar and conclude that the language in section 113--8 is directory, not mandatory. First, according to DelVillar, if the court fails to admonish a defendant, any defendant, who pleads guilty, guilty but mentally ill, or nolo contendere to a misdemeanor or felony offense, under section 113--8 of the Criminal Code, that defendant is entitled to withdraw his plea. See DelVillar, 383 Ill. App. 3d at 87 ("In looking at the plain language of the statute, there is no requirement that the admonishment is only to be given if the defendant indicates that he or she is not a United States citizen. We believe it is the type of plea which triggers the application of the statute not the immigration status" (emphasis in original)). Nothing in DelVillar limits its holding to noncitizens of the United States. Taken to its logical conclusion, DelVillar stands for the proposition that section 113--8 can be a basis upon which any defendant, regardless of immigration status, can rely to withdraw a plea. We do not believe that the legislature intended such an absurd result. Indeed, even Representative Delgado's remarks, which reflect a concern with the effect of a plea upon the status of a noncitizen, do not suggest that all citizens be advised that a plea may have consequences for noncitizens.

Second, in concluding that the admonishment is mandatory, both the dissenting justice in Bilelegne and the court in DelVillar relied heavily on the legislature's use of the word "shall." See

Bilelegne, 381 Ill. App. 3d at 297 (Hall, J., dissenting) ("[T]he fact that the legislature did not remove the word 'shall' from the bill prior to its enactment strongly suggests that the legislature intended that courts alert defendants contemplating pleading guilty to give careful consideration to the immigration consequences"); DelVillar, 383 Ill. App. 3d at 87 (emphasizing that the legislature had "many opportunities *** to remove the word 'shall' and it declined to do so"). However, as the supreme court noted in Robinson, where the issue is whether a statute is mandatory or directory (as opposed to mandatory or permissive), "the word 'shall' is not determinative." Robinson, 217 Ill. 2d at 54.

Moreover, when assessing whether the admonishment is mandatory, we consider whether the legislature included a consequence for a failure to comply with the statutory provision. Robinson, 217 Ill. 2d at 54. If so, it is "very strong evidence" that the legislature intended a mandatory reading. Robinson, 217 Ill. 2d at 54. Section 113--8 does not contain any consequence for a failure to comply. When the bill that ultimately became section 113--8 was first introduced, it contained the following additional subsection:

"(b) Upon the defendant's request, the court shall allow the defendant additional time to consider the appropriateness of the plea in light of the advisement described in subsection (a). If the defendant is arraigned on or after the effective date of this amendatory Act of the 93rd General Assembly and the court fails to advise the defendant as required by subsection (a) of this Section and the defendant shows that conviction of the offense to which the defendant pleaded guilty, guilty but mentally ill, or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States, the court, on the defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea

of guilty, guilty but mentally ill, or nolo contendere, and enter a plea of not guilty." 93d Ill. Gen. Assem., Senate Bill 43, 2003 Sess.

As noted above, this language was removed from the bill prior to its passage. Again, at the third reading of the bill, following removal of the above language, one of the bill's sponsors stated: "We gutted the bill. *** [T]his will just be an advisement by the court." 93d Ill. Gen. Assem., Senate Proceedings, March 19, 2003, at 4 (statements of Senator Silverstein). Certainly, had the legislature intended the statute to be more than "just an advisement," the language concerning the consequences of a failure to comply could have easily been left in the statute. See, e.g., Machado v. State, 839 A.2d 509, 513 (R.I. 2003) (defendant was statutorily entitled to withdraw his plea based on the trial court's failure to admonish defendant of the extent of immigration consequences before accepting the plea where the statute at issue specifically provided that "if the court fails to so inform the defendant *** the defendant shall be entitled, upon a proper petition for post-conviction relief, to have the plea vacated"). Including both the word "shall" and consequences for a failure to comply would have clearly set forth a legislative intent that section 113--8 be mandatory. The legislature did not do that; to the contrary, the legislative history, particularly Senator Silverstein's unequivocal admonishment, clearly shows that the legislature was advised that the language it was voting on was merely advisory.

Finally, we find relevant the fact that the legislature did not include words of negative limitation in the statute. See People v. Youngbey, 82 Ill. 2d 556, 560 (1980). In Youngbey, the issue before the court was whether criminal sentences, which were imposed in violation of a statutory command that the trial court consider a written presentence report prior to sentencing, should be vacated. The relevant portion of the statute provided: " 'A defendant shall not be sentenced for a felony before a written presentence report of investigation is presented to and considered by the

court.' " (Emphasis omitted.) <u>Youngbey</u>, 82 Ill. 2d at 561, citing Ill. Rev. Stat. 1979, ch. 38, par. 1005--3--1. In finding the language mandatory, the court noted that the legislature "coupled" the word "shall" with "the negative limitations of shall <u>not</u> be sentenced." (Emphasis in original.) <u>Youngbey</u>, 82 Ill. 2d at 562. Thus, the statute "specifically prohibited a judge from sentencing one convicted of a felony unless a written presentence investigation report was presented to and considered by the court. We cannot construe this requirement as other than mandatory. The action proscribed by the use of the negative 'not' renders this requirement much more plainly mandatory than if the requirement would simply have read 'the court shall consider a presentence report of investigation before sentencing.' " <u>Youngbey</u>, 82 Ill. 2d at 562. Here, the legislature did not use words of negative limitation. It easily could have drafted the legislation to read: "The court shall not accept a plea of guilty, guilty but mentally ill, or nolo contendere to a misdemeanor or felony offense, unless the court gives the following advisement to the defendant ***." See, <u>e.g.</u>, <u>Commonwealth v. Hilaire</u>, 437 Mass. 809, 813-16, 777 N.E.2d 804, 807 (2002). In such a case, the reading would be plainly mandatory.

In sum, we hold that section 113--8 is directory and, thus, that the trial court did not err in dismissing defendant's petition under section 2--1401.

III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

ZENOFF, P.J., and BOWMAN, J., concur.