2019 IL App (3d) 160758

Opinion filed March 12, 2019

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-16-0758 |
| v. | ) ) | Circuit No. 04-CF-232 |
| ANDREW GRANT, | ) ) | Honorable Albert L. Purham Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justice Lytton concurred in the judgment and opinion.
Justice McDade dissented, with opinion.

**OPINION**

¶ 1    The State charged defendant, Andrew Grant, by indictment in 2004 with aggravated criminal sexual assault (720 ILCS 5/12-14(a)(6) (West 2004)) and criminal sexual assault (*id.* § 12-13(a)(1)). The evidence at trial showed that defendant lived with the victim, Z.G., as well as the victim's parents, brother, and sister. Z.G. testified that defendant sexually assaulted her, penetrating her both vaginally and anally. Z.G.'s brother, Jeremy, testified that he went to Z.G.'s bedroom when he heard a loud commotion. The door was locked, but Jeremy forced his way in. When Jeremy entered the bedroom, defendant was pulling up his pants and Z.G. was naked in the bed. Z.G. went to the hospital the next day, where a number of forensic samples were taken.

The parties stipulated that no semen was found in the course of forensic testing. A hair found during Z.G.'s genital examination and scrapings from beneath Z.G.'s fingernails were collected but not submitted for testing.

¶ 2    Defendant testified that he was with Z.G. in her bedroom to help her clean up shattered glass. When Jeremy came to the door, Z.G. told defendant that she did not want Jeremy to come in because she had previously had sexual intercourse with Jeremy. When Jeremy eventually entered the bedroom, defendant excoriated him for having sexual intercourse with his own sister. Jeremy then woke the other household members and told them that defendant was having sexual intercourse with Z.G.

¶ 3    The jury found defendant guilty on both counts. The court entered judgment only on the charge of aggravated criminal sexual assault, sentencing defendant to a term of 14 years' imprisonment.

¶ 4    On June 5, 2013, the Illinois Innocence Project filed a motion for forensic testing on defendant's behalf. The motion requested testing on forensic evidence collected but not previously tested, namely the hair and the fingernail scrapings. Counsel for defendant later stated that he was withdrawing the request for testing on the fingernail scrapings. The circuit court denied defendant's motion for testing, but this court reversed that judgment. *People v. Grant*, 2016 IL App (3d) 140211, ¶ 31. In ordering that the recovered hair be tested, we noted that a nonmatch to defendant's DNA would not completely exonerate him but that "[i]f the hair was found to match Jeremy's DNA, such a result would severely undermine Jeremy's credibility while bolstering that of defendant." *Id.* ¶ 26.

¶ 5    On remand, the court appointed counsel for defendant and held a hearing relating to the motion for forensic testing. At that hearing, members of the Peoria Police Department testified

that all the forensic evidence in defendant's case had been destroyed in 2007 pursuant to department policy. Defense counsel moved for a new trial or a judgment notwithstanding the verdict on the grounds that law enforcement had failed in its duty to preserve evidence. The circuit court denied the motion, finding that the order for forensic testing could not be complied with. The court further stated, "I don't find that it was willful or there was a bad intent on the Sheriff Department [*sic*]." Defendant appeals.

¶ 6 The State Appellate Defender's Office was appointed to represent defendant in this appeal. The appointed counsel has now filed a motion indicating that the instant appeal presents no issues of merit upon which defendant could expect to obtain any relief. This motion, filed in accordance with *Pennsylvania v. Finley*, 481 U.S. 551 (1987), requests that appointed counsel be permitted to withdraw. Counsel has informed defendant of her intention to withdraw and has sent defendant a copy of her brief. Defendant has filed a response, which we have considered in reaching our disposition.

¶ 7 Section 116-4 of the Code of Criminal Procedure of 1963 (Code) holds that a law enforcement agency "shall preserve *** any physical evidence in their possession or control that is reasonably likely to contain forensic evidence." 725 ILCS 5/116-4(a) (West 2016). That section further holds that "[r]etention shall be until the completion of the sentence, including the period of mandatory supervised release for the offense." *Id.* § 116-4(b). Section 116-4 does not prescribe a remedy for a law enforcement agency's failure to preserve evidence.

¶ 8 A procedural command to a government official is presumptively directory, rather than mandatory. *People v. Robinson*, 217 Ill. 2d 43, 58 (2005). Here, that presumption is confirmed, as there is no rational remedy that defendant could possibly be afforded. A new trial for defendant would be wholly redundant; as there would be no new evidence to introduce or old

3

evidence to now be excluded, a potential retrial would be identical to the original trial. Moreover, where there is no specific likelihood that forensic testing on the hair would be helpful to defendant, the reversal of his conviction would be an absurd windfall.

¶ 9    While the State's destruction of evidence does not entitle defendant to statutory relief, we must consider whether it amounts to a violation of due process. In *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), the United States Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Here, the circuit court found that the Peoria Police Department's destruction of the potentially exculpatory evidence was not done in bad faith. The evidence was destroyed as a matter of policy, and there is nothing on the record to indicate that the court's finding of lack of bad faith was contrary to the manifest weight of the evidence. See *People v. Sutherland*, 223 Ill. 2d 187, 237 (2006) (declining to find bad faith where the defendant "failed to offer anything, other than mere speculation, demonstrating bad faith by the State").

¶ 10    Accordingly, upon review of the record, we conclude that the motion for new trial or judgment notwithstanding the verdict was properly denied and that there are no arguable errors to be considered on appeal. We further find that to continue with this appeal would be wholly frivolous. Accordingly, we affirm the judgment entered in the circuit court of Peoria County and allow the State Appellate Defender's Office to withdraw as counsel for defendant. See *People v. Lee*, 251 Ill. App. 3d 63 (1993).

¶ 11    Judgment affirmed and withdrawal motion allowed.

¶ 12    JUSTICE McDADE, dissenting:

¶ 13    The majority grants appellate counsel's motion to withdraw and affirms the circuit court's denial of defendant's motion for new trial or judgment notwithstanding the verdict. I

4

would deny counsel's motion to withdraw on the grounds that there are nonfrivolous issues that may be raised. See *Finley*, 481 U.S. at 554 (motion to withdraw on appeal should be granted only where reviewing court independently determines that " 'the case is wholly frivolous' ") (quoting *Anders v. California*, 386 U.S. 738, 744 (1967)). I therefore respectfully dissent.

¶ 14    Initially, and most importantly, there is no disputing that the Peoria Police Department violated section 116-4 of the Code. 725 ILCS 5/116-4 (West 2016). Both the majority and appellate counsel concede as much. Section 116-4 obligated the Peoria Police Department to preserve the evidence in question until defendant's sentence and term of mandatory supervised release were fully discharged. Defendant was sentenced to a term of 14 years' imprisonment in 2004. The Peoria Police Department destroyed the forensic evidence in 2007. The only question is one of remedy.

¶ 15    The majority asserts that the lack of a prescribed remedy in section 116-4 renders that section merely directory. While I agree that the absence of a remedy is evidence that a statute is directory, the analysis should not end there. In *Robinson*, 217 Ill. 2d at 56, our supreme court wrote:

> "It has long been held that 'statutory requisitions' directed to government officials
> ' "designed to secure order, system and dispatch in proceedings" ' are usually
> directory rather than mandatory, but if they ' "are intended for the protection of
> the citizen, *** and by a disregard of which his rights might be and generally
> would be injuriously affected, they are not directory but mandatory." ' *People v.*
> *Jennings*, 3 Ill. 2d 125, 127 (1954), quoting *French v. Edwards*, 80 U.S. (13
> Wall.) 506, 511, 20 L. Ed. 702, 703 (1872). In other words, commands to
> government officials regarding procedure are usually directory, but there is an

5

exception when the official's failure to follow the procedure will 'generally' injure the right the procedure was designed to protect."

¶ 16 Section 116-3 of the Code allows convicted defendants to seek posttrial testing of previously untested forensic evidence. 725 ILCS 5/116-3 (West 2016). Section 116-4 clearly serves to protect that right by ensuring the forensic evidence remains actually available for testing. Further, noncompliance with section 116-4—that is, the premature destruction of evidence—does not just "generally" injure the right provided in section 116-3, it absolutely and irreparably damages that right, as demonstrated in this very case. In short, without police preserving evidence in compliance with section 116-4, the right to request testing provided in section 116-3 means absolutely nothing. Given that section 116-4 thus seems to fit directly into the exception discussed in *Robinson*, I would order that the parties brief the mandatory/directory dichotomy and that exception in particular.

¶ 17 The majority also raises pragmatic concerns. Specifically, they point out that neither a new trial nor a reversal of defendant's conviction is logical or appropriate. I would simply urge that such conclusions should not be reached merely on the basis of counsel's motion to withdraw. At minimum, reaching those same conclusions after a fully briefed and published analysis could serve as the impetus that spurs the legislature to resolve what is a clear and significant shortcoming in the statutory scheme.

¶ 18 Finally, the majority concludes that there is no nonfrivolous argument to be made that the Peoria Police Department's actions violated defendant's due process rights. Under *Youngblood*, the failure to preserve potentially exculpatory evidence only amounts to a due process violation where the defendant can demonstrate that the police acted in bad faith. *Youngblood*, 488 U.S. at 58. The circuit court in the present case found that there was no bad faith on the part of the

Peoria Police Department, and the majority concludes that "there is nothing on the record to indicate that the court's finding of lack of bad faith was contrary to the manifest weight of the evidence."

¶ 19 To be sure, the circuit court hearing concerning the evidence was brief. It established only that the evidence in question was destroyed in 2007 as a matter of department policy. This information alone, however, could be sufficient to establish bad faith. Perhaps, on an individual level, the person who destroyed the evidence was not acting in bad faith, insofar as he or she was merely complying with department policy. Yet, the Peoria Police Department apparently had at the time—and may well still have today—a policy of destroying forensic evidence some three years after a conviction, despite the existence of section 116-4, which unequivocally instructs the department not to do so. How can the creation and implementation of a policy that ignores the law not be considered an exercise in bad faith? *At the very least*, surely appellate counsel could make a nonfrivolous argument to that effect. For that reason and those discussed above, I would deny counsel's motion to withdraw and order the parties to brief the case.