THIRD DIVISION
August 4, 2010

No. 1-08-0116

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| JOHNNIE HILL, | ) | Honorable |
| | ) | Nicholas Ford, |
| Defendant-Appellant. | ) | Judge Presiding. |

<u>MODIFIED UPON REHEARING</u>

JUSTICE QUINN delivered the opinion of the court:

Following a jury trial, defendant, Johnnie Hill, was convicted of first degree murder and home invasion in the death of his ex-girlfriend, Tamara Miller, and sentenced by the trial court to 60 years' imprisonment. On appeal, defendant contends: (1) that his sentence should be vacated and the case remanded for a new sentencing hearing because the trial court erred in denying his motion to strike the State's notice of intent to seek the death penalty, which was not filed until 247 days after his arraignment, in violation of Supreme Court Rule 416(c) (188 Ill. 2d R. 416(c)); and (2) that fees imposed by the trial court should be vacated, because they were not authorized by statute and were unrelated to defendant's offense. In its reply brief, the State concedes that the trial court improperly assessed fees against defendant and that those assessments should be

vacated. Therefore, the only issue before this court is whether the trial court erred in denying defendant's motion to strike the State's notice of intent to seek the death penalty. For the reasons set forth below, we affirm the circuit court.

## I. BACKGROUND

Defendant does not raise any issues concerning the validity of his conviction and, thus, we note only briefly the facts underlying that conviction. On November 17, 2001, defendant went to the apartment of his ex-girlfriend, Tamara Miller, who had obtained an order of protection prohibiting defendant from having any contact with her. Defendant waited outside Miller's apartment, and when she opened the door to leave, he forced his way in. Miller and defendant struggled. He punched her several times, pushed her into the bedroom and forced her to undress. In his confession, defendant said he did this because he thought that would prevent her from trying to escape. Shortly thereafter, Miller fell to her death from the bedroom window of her ninth-floor apartment.

After his arrest, defendant admitted to police officers and an assistant State's Attorney that he had forced his way into Miller's apartment, forced her to undress, and beat her but claimed that she jumped out of the window in an effort to escape from him. Witnesses at the scene, however, testified that they saw Miller falling backwards out of the window, and fragments of Miller's fingernails containing Hill's DNA were later found in the window sill.

Defendant was arraigned on December 31, 2001, and charged with first degree murder (720 ILCS 5/9-1(a)(1) (West 2006)), home invasion (720 ILCS 5/12-11(a)(2) (West 2006)), residential burglary (720 ILCS 5/19-3(a) (West 2006)), and robbery (720 ILCS 5/18-1(a) (West

2006)). On September 4, 2002, 247 days after his arraignment, the State filed a notice of intent to seek the death penalty. Almost four years later, on July 24, 2006, defendant, who was represented by three attorneys from the Cook County public defender's office, two of whom were members of the Capital Litigation Trial Bar, filed a motion to strike that notice, asserting that it was untimely filed pursuant to Supreme Court Rule 416(c). Specifically, defendant asserted that Rule 416(c) requires that the notice of intent to seek the death penalty be filed within 120 days after arraignment, unless for good cause shown the court directs otherwise, and that the State failed to show good cause for filing the notice 247 days after arraignment. The State argued that the committee comments to Rule 416(c) specifically state that if no notice of intent is filed, it is presumed that the State is seeking the death penalty, and the trial court should treat it as a capital case. Further, the State argued, that is exactly how both sides treated the case after the indictment and until the defendant filed his motion to strike. After a brief hearing, the trial court denied defendant's motion to strike.

Prior to *voir dire*, defendant waived his right to a jury for purposes of determining whether he was eligible for the death penalty and for sentencing. Following a jury trial, defendant was found guilty of first degree murder and home invasion. Defendant filed a motion for a new trial or, in the alternative, for a judgment notwithstanding the verdict, arguing, in part, that the trial court erred in not striking the State's notice of intent to seek the death penalty as untimely. The trial court denied that motion. A sentencing hearing was held before the trial judge, who found that defendant was death eligible under section 9-1 of the Criminal Code of 1961 (720 ILCS 5/9-1(b)(19) (West 2006)), because he committed the murder in violation of an

1-08-0116

order of protection. However, the trial judge did not impose the death penalty or a natural life sentence, but instead sentenced defendant to 60 years' imprisonment and imposed a $25,000 fine. The court also issued an order imposing costs and fees listed as court system, mental health court, youth diversion/peer court, drug court and court supervision fees. Defendant filed a motion to reconsider the sentence. The trial court granted the motion, in part, by giving defendant monetary credit for time spent in custody, but did not alter the remainder of defendant's sentence. This appeal followed.

## II. ANALYSIS

The primary issue before this court is whether the trial court erred in denying defendant's motion to strike the State's notice of intent to seek the death penalty, which was filed 247 days after defendant's arraignment. Before addressing that issue, however, we must first address the State's arguments that defendant's claim regarding the late notice of intent to seek the death penalty (1) is moot, (2) is barred by *laches*, (3) was forfeited due to defendant's failure to object sooner, and (4) did not prejudice defendant.

First, the State argues that defendant's claim is moot because the judge did not impose a death sentence but, rather, sentenced defendant to 60 years. Therefore, the State asserts, there is no live controversy, and because this court cannot preclude the death penalty or grant the requested relief, it should refuse to entertain the claim. We disagree. As defendant asserts, if the circuit court had found that he was not death eligible, as it would have done if it had denied the State's notice of intent to seek the death penalty, the maximum prison sentence he could have received would have been 60 years. It is conceivable that if 60 years rather than death was the

maximum sentence, the trial judge might have sentenced defendant to a lesser term. An analogous issue was addressed in People v. Jackson, 199 Ill. 2d 286 (2002), wherein our supreme court held that an aggravated battery defendant's complaint that her sentence was unconstitutional was not moot, even though she was on parole and no longer incarcerated, because whether her sentence was 5 years or 10 years affected how long she could be reincarcerated for a violation of the conditions of her release. Jackson, 199 Ill. 2d at 294. Similarly, in this case, even though defendant did not receive the death penalty, it is possible that if the trial court had granted his motion to strike the State's notice, he would have been sentenced to less than the maximum sentence of 60 years. Further, contrary to the State's argument, this court can grant the requested relief, by remanding the case to the trial court for resentencing. Therefore, we reject the State's argument that defendant's claim is moot.

Next, the State argues that defendant's claim is barred by *laches*, because he waited until four years after the State's notice was filed to object to that notice. *Laches* is an equitable doctrine that precludes a litigant from asserting a claim when the litigant's unreasonable delay in raising the claim has prejudiced the opposing party. Tully v. Illinois, 143 Ill. 2d 425, 432 (1991). The doctrine is grounded in the equitable notion that courts are reluctant to aid a party who has knowingly slept on his rights to the detriment of the opposing party. Tully, 154 Ill. 2d at 432. The State relies on the holding in Tully, a civil case, and does not cite a criminal case applying the *laches* doctrine to a defendant in a criminal case, much less a defendant in a capital case. Even if the doctrine were to apply to defendants in a criminal case, the State would not prevail on this issue. Two elements are necessary to find *laches*: (1) lack of diligence by the party asserting

the claim; and (2) prejudice to the opposing party resulting from the delay. Tully, 154 Ill. 2d at 432. We do not find that both elements were met in this case. Although a four-year delay may indicate a lack of due diligence by defendant, there is no evidence in the record showing that the State was prejudiced, as defendant filed the motion prior to the start of the trial and well before the hearing on defendant's eligibility for the death penalty. Therefore, defendant's claim is not barred by *laches.*

The State also contends that defendant forfeited his claim by failing to file a timely motion to strike the State's notice. The State relies on Gulley v. Noy, 316 Ill. App. 3d 861 (2000), for support. In Gulley, plaintiff filed a medical malpractice complaint against a doctor and the doctor's employer but failed to attach an affidavit stating that he had consulted with a health professional in whose opinion there is a "reasonable and meritorious cause" for the filing of the action and a written report from that health professional indicating the basis for his determination, as required by section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (a)(1) (West 2006)). Gulley, 316 Ill. App. 3d at 862. Two and a half years later, defendants filed a motion to dismiss, citing plaintiff's failure to comply with section 2-622. In the interim, defendants had filed an answer, initiated discovery, and filed a motion for a stay of proceedings. Gulley, 316 Ill. App. 3d at 866. The trial court granted the motion to dismiss, but this court reversed, noting that Illinois courts have held that "forfeiture of a legal right arises when conduct of the person against whom forfeiture is asserted is inconsistent with an intent to enforce that right." Gulley, 316 Ill. App. 3d at 865. The court found that defendants forfeited their right to seek dismissal under section 2-622, where their actions prior to filing the motion to dismiss

"manifested an intent to move the case forward" and to "overlook [plaintiff's] failure to file the health professional's report." Gulley, 316 Ill. App. 3d at 866.

In this case, the State argues that defendant similarly forfeited his right to challenge the State's late notice of intent to seek the death penalty by waiting four years to object. Gulley is inapposite, however, first because it is a civil case, involving a pleading requirement designed to reduce the number of frivolous medical malpractice lawsuits and eliminate such actions at an early stage, before litigation expenses mount. In that case, the defendants, whom the statute was intended to protect, engaged in conduct manifesting an intent to move forward with the case rather than challenge it on pleading grounds. The instant case, however, involves a rule intended to ensure criminal defendants will be notified at an early stage in a potential capital case whether or not the State will be seeking the death penalty against them, and a defendant does not forfeit his right to argue that the State has failed to adhere to the procedural requirements in a capital case simply by failing to file a timely motion to strike. Further, in this case, the defendant's lawyers did take steps that showed that they were not simply acquiescing in the State's effort to seek the death penalty, by filing a motion in August 2003 to bar death penalty proceedings on the grounds that the prosecution could not prove an aggravating factor. Therefore, defendant did not forfeit his right to object to the State's failure to file a timely notice of intent to seek the death penalty.

Lastly, the State argues that defendant's failure to act diligently in objecting to the notice of intent to seek the death penalty shows that he was not prejudiced by any delay by the State. Specifically, the State argues that both sides treated the case as a capital case despite the State's

1-08-0116

failure to file the notice, and that the defendant received many of the protections afforded to defendants in capital cases, which would not otherwise have been available to him. Further, the State asserts that treating the case as a capital case may have prompted defense counsel to obtain additional evidence in mitigation, which might have been a factor in the trial court's decision to forego the death penalty in favor of a 60-year sentence. However, as previously addressed, if defendant had not been deemed death eligible, the maximum possible sentence the trial court could have imposed would have been 60 years, and the judge may have decided under those circumstances to impose less than the maximum. Therefore, if the defendant can show that the trial court erred in denying his motion to strike, he likely can show that he was prejudiced by that error.

Turning now to the primary issue raised on appeal, defendant asserts that the trial court erred when it denied his motion to strike the State's notice of intent to seek the death penalty because it was filed too late pursuant to Supreme Court Rule 416(c) and that as a result his sentence should be vacated and the case remanded for a new sentencing hearing. Rule 416(c) provides, in relevant part, that "[t]he State's Attorney or Attorney General shall provide notice of the State's intention to seek or reject imposition of the death penalty by filing a Notice of Intent to Seek or Decline Death Penalty as soon as practicable. In no event shall the filing of said notice be later than 120 days after arraignment, unless for good cause shown, the court directs otherwise." 188 Ill. 2d R. 416(c).

The committee comments to Rule 416(c) provide that "All capital case procedures under Rule 416 take effect upon the earlier of: (1) notice that the State intends to seek the death

-8-

penalty; or (2) expiration of the time for notice under paragraph (c) without notice of the State's intent to seek or not seek the death penalty. A case is presumed to be capital in the event the State does not provide notice in the time allowed by paragraph (c) in order to prevent unreasonable delay in the application of capital case procedures." 188 Ill. 2d R. 416, Committee Comments, at lxxii. Further, the comment section provides: "Paragraph (c) requires the State to provide pretrial notice of its intent to seek or decline to seek the death penalty as soon as practicable. Unless the court directs otherwise for good cause shown, notice must be given within 120 days after the defendant's arraignment. *** The notice requirement is intended to improve trial administration by providing the defendant and the court with advance notice that a case is actually, rather than potentially, a capital case. The notice requirement is also intended to promote fairness in capital trials by ensuring the defendant is clearly advised of the State's intent to seek the death penalty and the basis upon which the death penalty will be sought, thereby allowing better preparation for trial. Early notice that the State will not seek the death penalty will also help to limit the use of capital case resources and procedures to actual capital cases." 188 Ill. 2d R. 416, Committee Comments, at lxxii.

Defendant contends that pursuant to the plain language of Rule 416(c), the State was required to file its notice of intent to seek the death penalty no later than 120 days after arraignment and that by filing it 247 days after arraignment, without showing good cause, the State violated the rule and, as a result, is precluded from seeking the death penalty. Defendant asserts that in denying his motion, the trial court appeared to rely on the committee comments to the rule to find that in cases in which the defendant is potentially eligible for the death penalty, it

should be presumed that the State is pursuing a death sentence, even if it does not file notice pursuant to Rule 416(c). Defendant argues that to the extent that the trial court relied on the committee comments it erred because there is no need for a court to look at such interpretive aids when, as here, the language of the rule is unambiguous. See People v. Hari, 218 Ill. 2d 275, 295 (2006) (refusing to look at committee comments to statute in interpreting the phrase "involuntarily intoxicated" because the meaning was plain from the language of the statute); People v. De Filippo, 387 Ill. App. 3d 322, 334 (2008) ("[w]here the plain language of the statute clearly expresses the legislative intent, we do not need to resort to other interpretive aids, such as committee comments"). Defendant contends that because the State should not have been permitted to seek the death penalty due to its delay in filing its notice, his sentence should be vacated and the case remanded for a new sentencing hearing under the appropriate statutory range.

The State agrees with defendant that the committee comments are not controlling, but argues that pursuant to the plain language of other provisions of Rule 416, which the State asserts must be read together with paragraph (c), there is a presumption that all potential death penalty cases are to be treated as such, unless and until the State declares its intention not to seek the death penalty. For instance, the State asserts that Rule 416(a), which provides that "The procedures adopted herein shall be applicable in all cases wherein capital punishment may be imposed, unless the State has given notice of its intention *not to seek the death penalty*," supports its argument that there is a presumption that the State is seeking the death penalty unless it files a notice of intention not to do so. (Emphasis added.) 188 Ill. 2d R. 416(a). Rule 416(d) provides

further evidence of this reading, the State contends, by directing the trial judge to appoint two members of the Capital Litigation Trial Bar "[i]n all cases wherein the State has given notice of its intention to seek the death penalty, *or has failed to provide any notice* pursuant to paragraph (c)." (Emphasis added.) 188 Ill. 2d R. 416(d). According to the State, the Committee comments simply reiterate what is made clear by the rule, that all potential death penalty cases should be treated as such, unless the State announces otherwise. The State argues that reading the rule in this manner ensures that a defendant will be afforded all of the special protections available in death penalty cases.

The principles by which we construe supreme court rules are the same as those governing the interpretation of statutes. People v. Campbell, 224 Ill. 2d 80, 84 (2006). The goal is to ascertain and give effect to the intention of the drafters of the rule. Campbell, 224 Ill. 2d at 84. A court will apply clear and unambiguous language of a rule as it is written, without resorting to any further tools of construction. Campbell, 224 Ill. 2d at 84. Pursuant to the State's interpretation of Rule 416, all death-eligible cases are to be treated as such unless the State files a notice of intent not to seek the death penalty. However, the plain language of Rule 416(c) appears to unambiguously impose a duty on the State to notify defendant within 120 days of arraignment if it intends to seek the death penalty. Our supreme court has held, "a statute must be read as a whole, and no word or paragraph should be interpreted so as to be rendered meaningless." In re J.W., 204 Ill. 2d 50, 63 (2003). As defendant asserts, under the State's interpretation of Rule 416(c), there would be no reason to provide notice of intent to seek the death penalty, and this construction entirely reads out the requirement that the State affirmatively

-11-

provide the defendant such notice no later than 120 days after arraignment. Therefore, we find that Rule 416(c) does impose a duty upon the State to notify defendants within 120 days of arraignment whether it intends to seek the death penalty. The issue then is whether this duty is "mandatory" in the sense that, as defendant asserts, a failure to file the notice precludes the State from seeking the death penalty. Two recent decisions of our supreme court, People v. Robinson, 217 Ill. 2d 43 (2005), and People v. Delvillar, 235 Ill. 2d 507 (2009), which addressed a similar issue in the context of a statutorily imposed duty, are instructive in addressing this issue.

In Robinson, petitioner filed a *pro se* petition under the Post-Conviction Hearing Act (Act) (725 ILS 5/122-1 *et seq.* (West 2006)), challenging his convictions for first degree murder and attempted first degree murder. Robinson, 217 Ill. 2d at 46. The circuit court of Cook County summarily dismissed his petition as frivolous and patently without merit, and 12 days later, the clerk served the order on the petitioner by certified mail. Robinson, 217 Ill. 2d at 47. However, the Post-Conviction Hearing Act provides that such an order "shall be served upon the petitioner by certified mail within 10 days of its entry." 725 ILS 5/122-2.1(a)(2) (West 2006). Petitioner appealed and the appellate court reversed, holding that the Act's 10-day service provision is mandatory, and therefore, the clerk's failure to timely serve petitioner required that the petition be remanded for further proceedings. People v. Robinson, 343 Ill. App. 3d 910 (2003).

The State appealed to our supreme court, which reversed the appellate court. The court agreed with the appellate court that the 10-day requirement of section 122-2.1(a)(2) is mandatory, and not merely a suggested time frame, and that in failing to serve the notice within 10 days, the

1-08-0116

clerk failed to do something that was obligatory. Robinson, 217 Ill. 2d at 50. However, the court found that the dispositive issue is what is "the *consequence* of the clerk's failure." (Emphasis in original.) Robinson, 217 Ill. 2d at 51. The answer to that question, the court stated, is determined by whether the statute is mandatory or directory, which is separate from the question of whether the statute is mandatory or permissive. Robinson, 217 Ill. 2d at 51. "[T]he mandatory-permissive dichotomy concerns whether the language of a statute has the force of a command that imposes an obligation, or is merely a grant of permission or a suggestion, which therefore imposes no obligation." Robinson, 217 Ill. 2d at 52. With that dichotomy, the court stated, the use of the word "shall" indicates the legislature's intent to impose a mandatory obligation. Robinson, 217 Ill. 2d at 52.

The mandatory-directory dichotomy, however, "concerns the consequences of a failure to fulfill an obligation." Robinson, 217 Ill. 2d at 52. With that dichotomy, the use of the word "shall" is not determinative. Instead, to determine whether a statutory command is mandatory or directory is a question of statutory construction, which is reviewed *de novo*. People v. Ramirez, 214 Ill. 2d 176, 179 (2005). The answer is a matter of legislative intent (Pullen v. Mulligan, 138 Ill. 2d 21, 46 (1990)), and the best evidence of that intent is the statute's language (Pullen, 138 Ill. 2d at 46). When the statute expressly prescribes a consequence for failure to obey a statutory provision, that is "very strong evidence the legislature intended that consequence to be mandatory." Robinson, 217 Ill. 2d at 54. The State argued that the statute does not specify a consequence for the clerk's tardiness, while the petitioner asserted that the consequence is specified in section 122-2.1(b), which provides that if a petition "is not dismissed pursuant to this

-13-

1-08-0116

Section, the court shall order the petition to be docketed for further consideration in accordance with Sections 122-4 through 122-6." 725 ILCS 5/122-2.1(b) (West 2006). The court, however, found the statutory language ambiguous as to whether untimely service requires that the petition be docketed for further consideration. The court then looked to the purpose of the statute to determine the legislature's intent. Robinson, 217 Ill. 2d at 54. The court stated that when statutes command government officials to take certain procedural actions, there is a presumption that they are directory rather than mandatory. Robinson, 217 Ill. 2d at 56. However, the court identified two exceptions that will overcome that presumption: (1) where a government official's failure to follow a procedure will "generally" injure the right the procedure was intended to protect and (2) where the statute includes negative words importing that the acts required shall not be done in any other manner or time. Robinson, 217 Ill. 2d at 56-57.

The Robinson court found that neither exception applied in the case before it. First, the court stated that the 10-day service requirement is "a procedural command to the clerk meant to secure 'dispatch in proceedings' for the sake of protecting the petitioner's right to appeal." Robinson, 217 Ill. 2d at 57, citing People v. Adams, 338 Ill. App. 3d 471, 474 (2003). "While the right to appeal might be injured by untimely service in a given case, there is no reason to believe that it generally would be." Robinson, 217 Ill. App. 3d 57. The right to appeal is preserved if notice is served within 30 days (188 Ill. 2d R. 606), which leaves 20 days to prepare a notice of appeal. Therefore, there are many cases in which untimely notice will have no effect on the right to appeal. Robinson, 217 Ill. App. 3d at 57. As a result, the court found that a failure to serve the notice within 10 days "is not so likely to prejudice the right to appeal as to

-14-

require an exception to the general rule that procedural commands to government officials are directory." Robinson, 217 Ill. 2d at 57.

The court also found that the second exception did not apply, because the statute does not contain negative words indicating that no dismissal shall occur or become effective unless the petitioner is timely served. Robinson, 217 Ill. 2d at 58. Therefore, the court concluded that the 10-day service requirement is a procedural command, which is presumptively directory, and that neither exception applied to overcome that presumption. Robinson, 217 Ill. 2d at 58. As a result, the clerk's tardiness in effecting service did not invalidate the judgment of the circuit court. Robinson, 217 Ill. 2d at 58-59.

This distinction between mandatory and permissive and mandatory and directory was examined further by our supreme court in People v. Delvillar, 235 Ill. 2d 507 (2009). In Delvillar, pursuant to a plea agreement, defendant pled guilty to one count of aggravated unlawful use of a weapon in exchange for a four year prison sentence and a recommendation that defendant be sent to boot camp. Delvillar, 235 Ill. 2d at 511. At the plea hearing, the trial court asked defendant several questions, including whether he was a United States citizen. Defendant answered "yes" and based in part on this response, the court did not admonish defendant of any potential immigration consequences that might be imposed on a noncitizen as a result of a guilty plea. Delvillar, 235 Ill. 2d at 511. The court advised defendant that if he wanted to appeal, he would first have to file a motion to withdraw his guilty plea, stating all of the reasons for wanting to do so. Delvillar, 235 Ill. 2d at 512.

Approximately two weeks after he was sentenced, defendant filed a motion to withdraw

his guilty plea and vacate his conviction, asserting that he did not knowingly, intelligently, or voluntarily waive his right to trial or fully understand or comprehend the admonishments of the court at the time of his guilty plea. Delvillar, 235 Ill. 2d at 512. In his motion, defendant stated that at the time of his plea, defense counsel did not know that defendant was a resident alien and not a United States citizen. Delvillar, 235 Ill. 2d at 512. Defendant contended that pursuant to section 113-8 of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-8 (West 2006)),[1] the court was required to advise him of the immigration consequences of his guilty plea but failed to do so. Delvillar, 235 Ill. 2d at 512. In a hearing on defendant's motion, the trial court, after reviewing the record, confirmed that defendant had stated that he was a United States citizen and concluded that " 'he *** lied to the court.' " Delvillar, 235 Ill. 2d at 512. The court denied defendant's motion to withdraw his guilty plea, and he appealed to this court, which reversed, holding that pursuant to section 113-8, the circuit court had a mandatory duty to admonish defendant of the potential immigration consequences of a guilty plea, regardless of their immigration status. People v. Delvillar, 383 Ill. App. 3d 80, 88-89 (2008). The appellate court acknowledged that in People v. Bilelegne, 381 Ill. App. 3d 292 (2008), the second division held that section 113-8 is directory rather than mandatory, but the court agreed with the dissent, which

---

[1] Section 113-8 provides as follows:

"Before the acceptance of a plea of guilty, guilty but mentally ill, or nolo contendere to a misdemeanor or felony offense, the court shall give the following advisement to the defendant in open court:

'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " 725 ILCS 5/113-8 (West 2006).

found "that the fact that the word 'shall' remained in the statute, after *** extensive redrafting and rewording, strongly suggests that the legislature intended that courts must alert defendants contemplating a guilty plea that they should be aware of and give careful consideration to the potential consequences on immigration status." Delvillar, 383 Ill. App. 3d at 86-87, citing Bilelegne, 381 Ill. App. 3d at 297-98 (Hall, J., dissenting).

In reversing, our supreme court noted that the question presented was whether the failure to admonish defendant of the possible immigration consequences of his guilty plea, pursuant to section 113-8 of the Code of Criminal Procedure of 1963, required the circuit court to grant defendant's subsequent motion to withdraw his guilty plea and vacate a defendant's conviction. Delvillar, 235 Ill. 2d at 514. The court stated that "[r]esolution of this issue requires an explanation of two distinct questions that are *** easily confused because they both contain the term 'mandatory.' " Delvillar, 235 Ill. 2d at 514. One question is whether the statute is mandatory or permissive. As in Robinson, the court stated that in that context, mandatory " ' "refers to an obligatory duty which a governmental entity is required to perform." ' " Delvillar, 235 Ill. 2d at 514, quoting Robinson, 217 Ill. 2d at 51, quoting Morris v. County of Marin, 18 Cal. 3d 901, 908, 559 P.2d 606, 610, 136 Cal. Rptr. 251, 255 (1977), and permissive refers to a discretionary power, which a government entity " ' "may exercise or not as it chooses." ' " Delvillar, 235 Ill. 2d at 514, quoting Robinson, 217 Ill. 2d at 51, quoting Morris, 18 Cal. 3d at 908, 559 P.2d at 610-11, 136 Cal. Rptr. at 255-56.

The second question asks whether a statutory provision is mandatory or directory. Delvillar, 235 Ill. 2d at 514. Statutes are mandatory, rather than directory, "if the intent of the

legislature dictates a particular consequence for failure to comply with the provision." Delvillar, 235 Ill. 2d at 514-15, citing Pullen v. Mulligan, 138 Ill. 2d 21, 46 (1990). "In the absence of such intent the statute is directory and no particular consequence flows from noncompliance. That is not to say, however, that there are *no* consequences. A directory reading acknowledges only that no specific consequence is triggered by the failure to comply with the statute." (Emphasis in original.) Delvillar, 235 Ill. 2d at 515, citing Carr v. Board of Education of Homewood-Flossmoor Community High School District No. 233, 14 Ill. 2d 40, 44 (1958) (reading as directory a statutory provision requiring execution of affidavits of qualifications during an election, where statute did not expressly void ballots that were cast without such affidavits).

The Delvillar court stated that like the provision in Robinson, the admonishment to inform defendants of immigration consequences is mandatory in the sense that the circuit court does not have discretion in giving the admonishment, regardless of whether a defendant has indicated that he is a Unites States citizen or whether a defendant acknowledges a lack of citizenship. Delvillar, 235 Ill. 2d at 516. However, as in Robinson, the dispositive issue is whether the statute is mandatory or directory, which "determines the consequences of a failure to give the admonishment." Delvillar, 235 Ill. 2d at 516, citing Robinson, 217 Ill. 2d at 52. Following the framework set forth in Robinson, the court stated that "[w]ith respect to the mandatory/directory dichotomy, we presume that language issuing a procedural command to a government official indicates an intent that the statute is directory." Delvillar, 235 Ill. App. 3d at 517, citing Robinson, 217 Ill. 2d at 58. "This presumption is overcome under either of two conditions. A provision is mandatory under this dichotomy when there is negative language

-18-

prohibiting further action in the case of noncompliance or when the right the provision is designed to protect would generally be injured under a directory reading." Delvillar, 235 Ill. 2d at 517, citing Robinson, 217 Ill. 2d at 58. With regard to the first condition, the court found that section 113-8 lacks negative language prohibiting further action. For instance, the statute does not prevent the circuit court from accepting defendant's guilty plea if the court fails to give the section 113-8 admonishment. Delvillar, 235 Ill. 2d at 517. Therefore, the court found that the language of section 113-8 does not overcome the presumption that procedural commands are directory rather than mandatory. Delvillar, 235 Ill. 2d at 517-18.

Next, the court looked at the right that section 113-8 of the Code of Criminal Procedure was designed to protect and whether it would generally be injured by a directory reading of the statute. The court found that the right to be protected is the right of a defendant to intelligently waive a jury trial and enter a guilty plea. Delvillar, 235 Ill. 2d at 518. Section 113-8 attempts to protect that right by informing defendants of potential immigration consequences if they enter a guilty plea. The court found that, "[a]lthough an individual defendant's right to waive a jury trial might be injured by the failure to give the admonishment required by section 113-8, it cannot be said that it generally would be so. Immigration consequences-in particular, deportation-are not applicable to United States Citizens." Delvillar, 235 Ill. 2d at 518, citing Oforji v. Ashcroft, 354 F.3d 609, 619 (7th Cir. 2003) (Posner, J., concurring). Therefore, because the presence or absence of the admonishment in a case involving a United States citizen does not affect that defendant's right to waive his or her trial, "we conclude that the presumption of a directory reading of section 113-8 is not overcome." Delvillar, 236 Ill. 2d at 519. The court concluded,

therefore, that although section 113-8 imposes a mandatory obligation on the circuit court to admonish defendants of the potential immigration consequences of a guilty plea, failing to so admonish them does not automatically require the court to allow a motion to withdraw a guilty plea. Instead, the omission of that admonishment is but one factor to be considered by the court when ruling on a defendant's motion to withdraw a guilty plea. Delvillar, 235 Ill. 2d at 519.

Applying the framework delineated in Robinson and Delvillar to the instant case, we find, as previously noted, that Rule 416(c) imposes a mandatory obligation on the State to notify defendants within 120 days of arraignment whether or not it intends to seek the death penalty. However, the dispositive issue is whether the statute is mandatory or directory, which is reviewed *de novo*. Robinson, 217 Ill. 2d at 54. Defendant correctly points out in a supplemental brief filed after oral arguments that our supreme court has not yet analyzed the issue of whether one of its rules is directory rather than mandatory. As defendant notes, the issue was recently raised in People v. Garstecki, 234 Ill. 2d 430 (2009), where, in construing Supreme Court Rule 431(a), the court found that because the trial court complied with the rules mandatory obligations, it did not need to reach the question of whether the rule was mandatory or permissive. Garstecki, 234 Ill. 2d at 445. However, the absence of a ruling by our supreme court does not preclude this court from determining whether a supreme court rule is mandatory or directory.

As previously noted, in making that determination, we presume that language issuing a procedural command to a government official indicates an intent that the rule is directory. Robinson, 217 Ill. 2d at 58. That presumption is overcome when there is negative language prohibiting further action in the case of noncompliance or when the right to be protected would

be injured under a directory reading. Robinson, 217 Ill. 2d at 58. In the instant case, with regard to the first condition, Rule 416(c) does not contain negative language prohibiting further action by, for instance, precluding the State from pursuing the death penalty in the absence of a timely filed notice. Defendant, however, relying on People v. Exson, 384 Ill. App. 3d 794 (2008), asserts that the consequence for the State's failure to timely file a notice of intent to seek the death penalty is that the State may not then do so. In Exson, the defendant, who was charged with two counts of possession of a controlled substance, demanded a jury trial. Section 103-5(a) of the Code of Criminal Procedure provides that "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody ***." 725 ILCS 5/103-5(a) (West 2006). However, pursuant to section 103-5(c) of the Code the statutory period in which a defendant must be tried may be extended once by up to 60 days where the State has been unable to obtain evidence despite exercising due diligence and there are reasonable grounds to believe that such results may be obtained at a later date. 725 ILCS 5/103-5(c) (West 2006).

In Exson, on the 119th day after defendant was taken into custody, the State made its first attempt to locate the chemist who performed the analysis of the substances at issue. Exson, 384 Ill. App. 3d at 800. When the State was unable to locate the chemist, it requested a 30-day continuance in order to secure the chemist's presence. Exson, 384 Ill. App. 3d at 800. The trial court granted the motion. Exson, 384 Ill. App. 3d at 796. This court, however, reversed, stating that "[w]e fail to see how the State's actions in attempting to contact the chemist on the 119th of the 120-day period rise to the level of due diligence as that term is used in section 103-5(c)."

<u>Exson</u>, 384 Ill. App. 3d at 800. Therefore, this court held that the trial court abused its discretion by granting the 30-day continuance and that the "only possible remedy for the deprivation of defendant's statutory right to a speedy trial is discharge." <u>Exson</u>, 384 Ill. App. 3d at 803. Defendant contends that, similarly in this case, because the State failed to file its notice of intent to seek the death penalty within the statutorily mandated 120-day period, his sentence must be vacated and the case remanded for a new sentencing hearing. However, as the State correctly asserts, <u>Exson</u> is distinguishable from the instant case because the speedy trial statute explicitly provides a remedy for a violation, namely, the dismissal of charges. Conversely, Rule 416 does not specify any remedy for a failure to timely file a notice of intent to seek the death penalty. Therefore, due to the absence of any negative language in the rule itself, the first condition for overcoming the presumption that the rule is directory has not been met.

In his supplemental brief, defendant asserts that applying the presumption that a statute is directory unless a consequence for noncompliance is prescribed to our supreme court's rules would result in a finding that all of the rules are directory rather than mandatory since the rules do not prescribe a consequence for noncompliance. Defendant asserts that this result would directly contradict the repeated pronouncements of our supreme court that its rules are enforceable. We agree with defendant that the absence of consequences for noncompliance within the supreme court rules may result in a finding that the rules are directory rather than mandatory. However, violations of a rule that is directory does not mean "that there are *no* consequences. A directory reading acknowledges only that no specific consequence is triggered by the failure to comply with the statute." (Emphasis in original.) <u>Delvillar</u>, 235 Ill. 2d at 515.

Consequently, violations of our supreme court rules may well result in reversal. However, reversal is not mandated for every violation.

Next, we look at the rights Rule 416(c) is intended to protect. According to comments to the rule, "[t]he notice requirement is intended to improve trial administration by providing the defendant and the court with advance notice that a case is actually, rather than potentially, a capital case. The notice requirement is also intended to promote fairness in capital trials by ensuring the defendant is clearly advised of the State's intent to seek the death penalty and the basis upon which the death penalty will be sought, thereby allowing better preparation for trial. Early notice that the State will not seek the death penalty will also help to limit the use of capital case resources and procedures to actual capital cases." 188 Ill. 2d R. 416, Committee Comments, at lxxii. With regard to the 120-day time frame, the comments state the committee found that "notice no more than 120 days after arraignment will be far enough in advance of the trial date to provide the defendant with meaningful notice of the nature of the case and to trigger capital case procedures early enough to allow the defendant to receive the intended benefit of those procedures." 188 Ill. 2d R. 416, Committee Comments, at lxxii.

As in Delvillar, although an individual defendant's rights might be injured by the State's failure to timely file a notice of intent to seek the death penalty, it cannot be said that it generally would be so. For instance, in this case, although the notice of intent to seek the death penalty was filed more than 120 days after arraignment, defendant was afforded the protections that would be given to defendants who are deemed death eligible. Defense counsel was permitted to seek discovery depositions of the State's witnesses pursuant to Supreme Court Rule 416(c),

several case management conferences were held pursuant to Rule 416(f), and defendant received additional peremptory challenges and permission to "life qualify" the jury pursuant to Morgan v. Illinois, 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222 (1992) (holding that on *voir dire* a trial court must, at a capital defendant's request, inquire into whether a potential juror would automatically impose the death penalty upon the defendant's conviction). In addition, and perhaps most significantly, defendant was represented by three attorneys, two of whom were members of the Capital Litigation Trial Bar, as required by Supreme Court Rule 416(d). Finally, we note that defendant's trial took place some four years after the State filed the notice that it intended to seek the death penalty. This was certainly "far enough in advance of the trial date to provide the defendant with meaningful notice of the nature of the case and to trigger capital case procedures early enough to allow the defendant to receive the intended benefit of those procedures." 188 Ill. 2d R. 416, Committee Comments, at lxxii. Considering all of these factors, because there are cases in which a defendant's rights are not injured by the State's failure to timely file a notice of intent to seek the death penalty, we find that the presumption of a directory reading of Rule 416(c) is not overcome. Therefore, although Rule 416(c) imposes a mandatory obligation on the State to file a notice of intent to seek the death penalty within 120 days of a defendant's arraignment, failing to timely file such a notice does not require that the trial court automatically strike the State's notice. Rather, it is one factor to be considered by the court when ruling on a defendant's motion to strike. It is foreseeable that in certain circumstances the State's failure to timely file the notice could preclude it from seeking the death penalty; however, we do not reach that conclusion here.

1-08-0116

In the instant case, defendant claims that the State failed to timely file its notice of intent to seek the death penalty. This claim alone does not meet defendant's burden of showing that he suffered prejudice as a result of the State's failure to timely file, where, as here, he was afforded all of the protections that would be given to defendants who are deemed to be potentially death eligible. Therefore, we find that the trial court did not err in denying defendant's motion to strike the State's notice of intent to seek the death penalty.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court and remand the matter with directions to vacate the $5 court system fee, the $10 mental health court assessment, the $5 youth diversion/peer court assessment, the $5 drug court assessment, and the $25 court supervision assessment and to amend the fines and fees order to reflect a reduction in the total amount of $50.

Affirmed and remanded with directions.

MURPHY, P.J., and COLEMAN, J., concur.