2024 IL App (1st) 232241-U

No. 1-23-2241

Order filed October 30, 2024

THIRD DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| KAREN M. MURPHY AND MARK KMIECIK ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | 17 CH 14834 |
| | ) | |
| THE CITY OF MARKHAM, | ) | Honorable |
| | ) | Caroline K. Moreland, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's order denying plaintiffs' motion for summary judgment and granting summary judgment in favor of the City of Markham.

¶ 2    This appeal arises from an amended class-action complaint filed by plaintiffs Mark J. Kmiecik and Karen M. Murphy against the City of Markham, Illinois (Markham). The certified class is composed of vehicle owners who, from June 2017 through November 2017, received red-light tickets issued by Markham's automated traffic law enforcement system, commonly

referred to as a red-light camera program.

¶ 3    Plaintiffs alleged that the tickets were void because they were issued during a period when a link on Markham's municipal website was inoperable. The link at issue allows the public to access information regarding Markham's red-light camera program. Plaintiffs alleged that during the pertinent time, this link was inoperable, which prevented the public from accessing certain online notice and reporting requirements contained in the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2020)).

¶ 4    The issue was eventually submitted to the circuit court of Cook County on cross-motions for summary judgment. The court granted Markham's motion for summary judgment and denied the plaintiffs' motion. This appeal followed, and for the reasons set forth below, we affirm.[1]

¶ 5                                    I. BACKGROUND

¶ 6    In July 2003, the City of Chicago, through its home rule authority, enacted an ordinance under the Chicago Municipal Code (Chicago Municipal Code §§ 9-102-010 to 9-102-070 (added July 9, 2003)), which established a red-light camera program. See *Kennedy v. City of Chicago*, 2022 IL App (1st) 210492, ¶ 3; *Kata v. City of Chicago*, 2018 IL App (1st) 162075-U, ¶ 6; *Keating v. City of Chicago*, 2013 IL App (1st) 112559-U, ¶ 2 "The red light camera program uses electronic monitoring devices to detect and record images of vehicles caught in an intersection in violation of a red light traffic signal." *Keating*, 2013 IL App (1st) 112559-U, ¶ 2.

¶ 7    Following the City of Chicago's implementation of its red-light camera program, the Illinois General Assembly enacted Public Act 94-795 (Pub. Act 94-795, eff. May 22, 2006), an enabling statute which authorized red-light camera programs in eight Illinois counties (625 ILCS

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon entry of a separate written order.

5/11-208.6(m) (West 2020)), including Cook County.

¶ 8      Relying on this enabling legislation, Markham, which is located in Cook County, enacted its own ordinance in 2007 authorizing the installation and operation of red-light cameras at certain intersections within its city limits. See Markham, IL., Code ¶ 72.15 (2007). Red-light cameras were installed at three intersections: 159th Street and Dixie Highway; 159th Street and Kedzie Avenue; and 159th Street and Pulaski Avenue.

¶ 9      The statutes relevant to the resolution of this appeal are subsections (k-3) and (k-7) of section 11-208.6 of the Illinois Vehicle Code. 625 ILCS 5/11-208.6 (k-3), (k-7) (West 2020).

¶ 10      Subsection (k-3) provides that municipalities and counties having one or more intersections equipped with red-light cameras must provide notice to drivers by posting the locations of the intersections on the website of the municipality or county. *Id*. subsection (k-3).

¶ 11      Subsection (k-7) provides that municipalities or counties which install and operate a red-light camera system:

> "shall conduct a statistical analysis to assess the safety impact of each *** system at an intersection following installation of the system and every 2 years thereafter. *** Each statistical analysis required by this subsection (k-7) shall be made available to the public and shall be published on the website of the municipality or county." *Id*. § (k-7).

¶ 12      To comply with subsections (k-3) and (k-7), Markham added a link to its website (cityofmarkham.net) which allows the public to access information regarding the locations of intersections equipped with red-light cameras and the statistical analysis results of each intersection.

¶ 13      In April 2016, plaintiff Karen M. Murphy received a violation notice based on images from the red-light camera located at the intersection of 159th Street and Pulaski Road. Murphy paid the

$100 fine without contest.

¶ 14    Plaintiff Mark J. Kmiecik received a violation notice dated June 5, 2017, based on red-light camera images from the same intersection. Kmiecik claimed that after he received the notice, he visited Markham's website to determine the location of other intersections with red-light cameras. Kmiecik visited the website on June 12, 13, and 19, 2017, and each time, received an error message stating "Apologies, but the page you're looking for can't be found." Kmiecik paid the $100 fine by check on June 19, 2017, marking the payment stub as "pay under protest."

¶ 15    Kmiecik claimed that either he or his attorney visited the website on June 20, July 10, 24, and 27, August 10 and 21, and October 10 and 11, 2017. Each time they tried to access the website they received the same error message. By November 15, 2017, Markham seemed to have resolved the website error.

¶ 16    On September 7, 2018, plaintiffs filed a two-count amended class action complaint against Markham in the circuit court of Cook County. Count I sought a declaratory judgment that automated red-light tickets issued from June 2017 through November 2017 were void. Plaintiffs alleged that the tickets were void because the inoperable website link failed to comply with subsection (k-3), since the public was unable to locate intersections with red-light cameras, and subsection (k-7), where the public was unable to access statistical analysis results. Count II asserted a claim for unjust enrichment based on Markham's collection of fines for the alleged void automated red-light tickets issued during the relevant six-month period.

¶ 17    The parties eventually filed cross-motions for summary judgment. In considering the cross-motions, the court sought to determine whether the notice requirements of subsection (k-3) and the reporting requirements of subsection (k-7), were mandatory provisions requiring strict compliance, or directory requiring only substantial compliance.

4

¶ 18     The court concluded that subsection (k-3) was a mandatory provision. However, the court went on to find that the website's failure to strictly comply with this provision did not render the automated red-light tickets void. The court found that the website substantially complied with the purpose of subsection (k-3), which the court determined was "to ensure that drivers are able to know the location of red light cameras through online notice." The court determined that the website was only temporarily inoperable and that plaintiffs failed to demonstrate they were prejudiced by the temporary outage.

¶ 19     Conversely, the court found that subsection (k-7) was a directory provision whose purpose was "to promote road safety, particularly at traffic-light intersections." The court concluded that the website substantially complied with the purpose of subsection (k-7) and that the "[p]laintiffs neither allege nor show any specific prejudice resulting from the website outage that caused the statistical analysis to become temporarily unavailable."

¶ 20     The court denied the plaintiffs' motion for summary judgment and granted summary judgment in favor of Markham. This timely appeal followed.

¶ 21                                II. ANALYSIS

¶ 22                           A. Standards of Review

¶ 23     On appeal, plaintiffs challenge both the circuit court's grant of summary judgment in favor of Markham and the denial of their cross-motion. "The purpose of summary judgment is to determine whether a genuine issue of material fact exists that would require a trial." *Hodges v. St. Clair County*, 263 Ill. App. 3d 490, 492 (1994). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILC 5/2-1005(c) (West 2012). "When parties file cross-motions for summary

5

judgment, they mutually agree that there are no genuine issues of material fact and that the case may be resolved as a matter of law." *Oswald v. Hamer*, 2018 IL 122203, ¶ 9. This case involves issues of statutory construction. "Statutory construction presents questions of law that are appropriate for summary judgment." *Id*. "Issues involving statutory construction and summary judgment rulings are reviewed *de novo*." *Id*.

¶ 24    Here, as they did below, plaintiffs argue on appeal that any automated red-light tickets issued from June 2017 through November 2017 were void because they were issued when the link on Markham's website, which allows the public to access information regarding its red-light camera program, was inoperable. They contend that the inoperable website link prevented the public from accessing the locations of intersections with red-light cameras and online statistical analysis results, as required by subsections (k-3) and (k-7) of section 11-208.6 of the Illinois Vehicle Code. Plaintiffs assert that the online-posting requirements of subsections (k-3) and (k-7) are mandatory requirements, with which Markham was required to strictly comply.

¶ 25                    B. Mandatory Versus Directory

¶ 26    At issue is whether the notice requirements of subsection (k-3) and the reporting requirements of subsection (k-7) are mandatory provisions requiring strict compliance, or directory provisions requiring only substantial compliance.

¶ 27    Our courts have employed a mandatory/directory analysis to assist in making this determination. *People v. Grant*, 2022 IL 126824, ¶ 30. " 'A mandatory provision and a directory provision are both couched in obligatory language, but they differ in that noncompliance with a mandatory provision vitiates the governmental action, whereas noncompliance with a directory provision has no such effect.' " *In re M.I.*, 2011 IL App (1st) 100865, ¶ 47 (quoting *People v. Four Thousand Eight Hundred Fifty Dollars ($4,850) United States Currency*, 2011 IL App (4th)

100528, ¶ 24). Whenever the mandatory/directory dichotomy is at issue, obligatory words such as "shall" are not determinative. *People v. Robinson*, 217 Ill. 2d 43, 54 (2005).

¶ 28    "Whether a statutory command is mandatory or directory is a question of statutory construction, which we review *de novo*." *Robinson*, 217 Ill. 2d at 54. "The answer is a matter of legislative intent." *Id*. "The drafters' intent is best indicated by the language of a statute or rule, given its plain and ordinary meaning." *People v. Geiler*, 2016 IL 119095, ¶ 17. " ' In determining the plain meaning of statutory terms, we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it.' " *In re M.I.*, 2013 IL 113776, ¶ 15 (quoting *People v. Perry*, 224 Ill. 2d 312, 323 (2007)).

¶ 29    "Statutes are mandatory when the legislative intent dictates a particular consequence for failure to comply with the provision." *In re M.I.*, 2011 IL App (1st) 100865, ¶ 47. " 'In the absence of such intent the statute is directory and no particular consequence flows from noncompliance. That is not to say, however, that there are no consequences. A directory reading acknowledges only that no specific consequence is triggered by the failure to comply with the statute.' " (Emphasis omitted.) *Id*. (quoting *People v, Delvillar*, 235 Ill. 2d 507, 515 (2009)).

¶ 30    "We presume that procedural commands to governmental officials are directory." *Geiler*, 2016 IL 119095, ¶ 18. This "presumption can be overcome under either of two conditions: (1) when there is negative language prohibiting further action in the case of noncompliance or (2) when the right the provision is designed to protect would generally be injured under a directory reading." *Lakewood Nursing & Rehabilitation Center, LLC v. Department of Public Health*, 2019 IL 124019, ¶ 29.

¶ 31                                    1. The Negative Language Condition

¶ 32    As to the first condition, we note that neither subsection (k-3) nor subsection (k-7) contains

negative language prohibiting further action or specific consequences for noncompliance.

¶ 33    Subsection (k-3) provides that "[a] municipality or county that has one or more intersections equipped with an automated traffic law enforcement system must provide notice to drivers by posting the locations of automated traffic law systems on the municipality or county website." 625 ILCS 5/11-208.6 (k-3) (West 2020).

¶ 34    Subsection (k-7) provides that municipalities or counties which install and operate a red-light camera system:

> "shall conduct a statistical analysis to assess the safety impact of each *** system at an intersection following installation of the system and every 2 years thereafter. *** Each statistical analysis required by this subsection (k-7) shall be made available to the public and shall be published on the website of the municipality or county." 625 ILCS 5/11-208.6 (k-7) (West 2020).

¶ 35    Neither subsection prohibits Markham from issuing drivers automated red-light tickets nor provides specific consequences for the website's noncompliance with these subsections. There is no statutory language in either subsection (k-3) nor subsection (k-7) which tells us that government action is rendered a nullity by a website's failure to comply with these subsections. Consequently, the negative language condition does not apply to overcome the presumption of directory constructions of subsections (k-3) and (k-7) of section 11-208.6 of the Illinois Vehicle Code.

¶ 36                    2. The Injury to Protected Rights Condition

¶ 37    We next consider whether the second condition overcomes the presumption of a directory construction of subsections (k-3) and (k-7). In this analysis, "courts do not look to whether *any* right of *any* person or entity will be adversely affected by a directory interpretation. Rather, we look to whether the right the statute is designed to protect will be injured by a directory

construction." (Emphasis in original.) *Lakewood Nursing*, 2019 IL 124019, ¶ 44.

¶ 38     With respect to subsection (k-3), plaintiffs contend that the right of the public to have online notice of the locations of intersections equipped with red-light cameras would be injured if this subsection was given a directory reading. In support of this contention, Kmiecik claims that he was prejudiced by the website's noncompliance with subsection (k-3) because each time he visited the website, he was unable to access online notice of the locations of intersections equipped with red-light cameras.

¶ 39     Kmiecik, however, fails to demonstrate exactly how he suffered prejudice due to his inability to access the locations of these intersections. He has not alleged or demonstrated that the website's outage affected his ability to obey normal traffic regulations, such as stopping at red lights.

¶ 40     One of the main objectives of a red-light camera program is to promote public safety on roadways by deterring drivers from disobeying the traffic laws and running red lights. See, *e.g.*, *Kilper v. City of Arnold, Mo.*, 2009 WL 2208404, at *17 (E.D. Mo. 2009) ("the use of red light cameras and related proceedings are rationally connected to the valid public safety purpose of reducing traffic accidents at traffic light intersections.") This factor strongly weighs in favor of construing subsection (k-3) as a directory provision.

¶ 41     We believe that one of the primary purposes of Markham's red-light camera program would be undermined if subsection (k-3) was given a mandatory construction because it would provide drivers who run red-lights with a technical basis for avoiding an automated red-light ticket. We doubt our legislature intended such a possibility. Consequently, we find that the right of the public to assess the locations of intersections equipped with red-light cameras would not be injured if subsection (k-3) was given a directory construction.

¶ 42    As to subsection (k-7), Kmiecik fails to provide evidence of any injury or prejudice suffered by him or any class member resulting from the inability to access online statistical analysis. Thus, the presumption in favor of a directory reading of subsection (k-7) has not been overcome.

¶ 43    In sum, the legal presumption that subsections (k-3) and (k-7) of section 11-208.6 of the Illinois Vehicle Code are directory provisions, has not been overcome. As a result, plaintiffs' argument that the automated red-light tickets they received are void, fails as a matter of law, as does their claim for unjust enrichment. See, *e.g.*, *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024-25 (2009) (when an underlying claim of unlawful or improper conduct is deficient, then a claim for unjust enrichment should be dismissed).

¶ 44    In light of our disposition of this appeal, we need not and do not consider Markham's alternative arguments that plaintiffs' claims are barred both by the doctrine of *res judicata* and by their failure to exhaust administrative remedies.[2]

¶ 45                                III. CONCLUSION

¶ 46    For the foregoing reasons, we affirm the circuit court's order denying plaintiffs' motion for summary judgment and granting summary judgment in favor of Markham.

¶ 47    Affirmed.

---

[2]Markham failed to argue before the trial court that plaintiffs' claims are barred by their failure to exhaust administrative remedies.